## THE COUNTY COMMISSIONERS OF CARROLL COUNTY, a Corporation,

### *vs.*

## THE MAYOR AND COMMON COUNCIL OF WESTMINSTER, a Municipal Corporation.

*Equity: jurisdiction; no remedy at law. Accounting: bill
for—; production of books, etc., in possession of other side;
counties and municipal corporations; tax lists, etc. Bill
of Rights: Art. 15: Equality of taxation. Roads:
taxation; applied to roads of particular dis-
tricts; Carroll County; Westminster.
Statutes: repeal by implication.*

In general, the question of the adequacy of remedies at law (as affecting the right to equitable relief) depends upon the facts of each particular case.                          p. 201

Where a municipal corporation seeks an accounting from a county for the proportion of the county roads tax which should, under the law, be paid to the city for its streets, etc., and where the amounts actually collected and the accounts concerning them, are all in the possession and control of the county authorities, a case for equitable relief is presented.    p. 201

In such proceedings, the city should forward to the County Commissioners a list of the assessable property liable for taxation within the corporation limits.                    p. 202

An Act appropriating the county road taxes levied and collected on proprety within a certain district or municipal corporation, to be used on the public roads in such district or municipal corporation, is not a violation of Art. 15 of the Bill of Rights providing for equality of taxation.       pp. 202, 203

Ch. 508 of the Acts of 1890, Ch. 164 of the Acts of 1892, Ch. 365 of the Acts of 1906, all relating to the roads and road taxes of Carroll County, *construed.*            pp. 205-211

The repeal of statutes by implication is not favored.    p. 206

*Decided April 18th, 1914.*

Appeal from the Circuit Court for Carroll County. (In Equity.) (THOMAS, C. J., FORSYTHE, JR., J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, URNER, PATTISON, STOCKBRIDGE and CONSTABLE, JJ.

*Charles E. Fink,* for the appellant.

*Guy W. Steele,* for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

The City of Westminster was created a municipal corporation prior to the year 1860. It was the County Seat of Carroll County and remained a part of that county, but the municipal corporation was given certain special, separate and distinct powers which, with the several amendments to them, were included as a portion of the local laws of Carroll County when those laws were codified in 1888, and they appear in the Code of that year in sections 214 to 254 of Article VII of the Public Local Laws. Among the powers given to the municipal corporation was the control over the streets, roads and alleys within the corporate limits, whether for the purpose of condemning and opening new highways, or of repairing and maintaining the existing ones. Sections 227 and 228. By sections 229 and 231 there was also vested in the municipal body the power to assess property located within or belonging to residents living within the corporate limits, as established by the Legislature. At the same time there existed in the County Commissioners of Carroll County the general powers vested in the County Commissioners by the Code of Public General Laws, and now appearing in the Code (1912), Article XXV, section 2.

In the year 1890 the General Assembly passed an Act designated as Chapter 508 of the Acts of that year. By this it was provided "that it shall be the duty of the County Com-

missioners of Carroll County to pay annually to the Mayor
and Common Council of Westminster one-half of the amount
of taxes levied and collected annually by the County Com-
missioners for road purposes upon assessable property liable
to taxation within the limits of the City of Westminster, to
be appropriated and used by the Mayor and Common Coun-
cil of Westminster for the repair, maintenance and improve-
ment of the streets and roads within the limits of said City."
In the year 1891 the County Commissioners of Carroll Coun-
ty paid over to the Mayor and Common Council of West-
minster from the levy of 1890 the sum of $800, as the propor-
tion due the city from the tax collected by said County Com-
missioners, and which sum of $800 was assumed to represent
the one-half of the road taxes levied upon and collected from
assessable property within the limits of Westminster, in con-
formity with the provisions of the Act of 1890 just quoted.
Since the year 1891 the City of Westminster has annually
presented a bill to, and received from, the County Commis-
sioners the like sum of $800 per annum, upon an assumption
that this was the proper amount of the proportion of taxes
collected, to which the City was entitled under the provisions
of the Act of 1890, and this payment has been made irre-
spective of whether there was an increase or decrease in the
assessable basis, or moneys collected for the road tax of the
county, and entirely irrespective of the rate per hundred dol-
lars levied for road purposes in any of the intervening years.

The present bill is filed by the municipal corporation for
an accounting upon the part of the County Commissioners of
the amounts received by them for such road tax in each of the
years, and for the payment over of any sum or sums which
may be found to be due to the municipal corporation as the
result of such accounting, and that without being furnished a
list of the assessable property liable to taxation within the
limits of the City of Westminster by the municipal authori-
ties.   The bill further prays for the rescission of the agree-
ment, if any, between the County Commissioners of Carroll

County and the Mayor and City Council of Westminster for the acceptance of $800 as the full share accruing to the City from the annual road levy, and that the receipts which had been given may be deemed as part payment only on account of each annual levy.

The bill was demurred to upon various grounds, which demurrer, after hearing, was overruled. Some of the questions raised under the demurrer may properly be disposed of *in limine*. Thus the demurrer raised the question of equitable jurisdiction in a case of this character, upon the ground that if there was any remedy at all, there was a full, complete and adequate remedy at law. It will be sufficient upon this point to say, that the question of adequacy and inadequacy of the remedy at law must depend in each case largely upon the facts of the particular case; the general rules are well and correctly stated in *Miller's Equity Procedure, sec.* 721, and in a note to the case of *Wiggins v. Bisso,* 5 Am. & Eng. Dec. in Eq. (1st Series) 65. An examination of the record in this case satisfies this Court that the character of the accounts involved is such as to present a case proper for an equitable accounting, rather than a suit at law. While not technically a bill for discovery it is in effect such, for there is no means available to the City authorities by which to know with precision the amounts actually collected for such taxes, except the accounts and returns in the possession and control of the County Commissioners.

The bill asks that the accounting be furnished without the City giving a list of the assessable property liable to taxation within the limits of the municipal corporation. It is true that the Act of 1890 nowhere requires the City to furnish any such list, and there are numerous cases to the effect that where such an Act as this does not contain a provision therefor, the City is not compellable to furnish such a list. On the other hand, it is the City which has invoked the jurisdiction of equity to do justice as between it and the County Commissioners. As already noted, the City has the express legisla-

tive authority to assess property within its limits for the purposes of taxation, a power which it cannot exercise without making a list of such property. The County Commissioners make their assessment by districts, and the Seventh District of Carroll County, in which the City of Westminster is located, is, so far as legal requirements are concerned, the smallest division for which the County Commissioners can be assumed to have the precise information. Later on it will appear that the demand of the City must be restricted to the year 1908 and subsequent years, and it is, therefore, placing no undue hardship or burden upon the municipal corporation tó require of it as a condition of demanding and receiving the proportion of the road tax allotted to it by the Act of 1890, that it should be required to furnish to the County Commissioners a list of the assessable property liable to taxation within the corporate limits.

The County Commissioners seek to avoid responsibility for any other or greater sum than the amount of $800 per annum paid over to the city upon the ground of the unconstitutionality of the Act. The ground of the supposed invalidity of the Act is that it contravenes Article XV of the Bill of Rights, which provides that "every person in the State or holding property therein ought to contribute his proportion of public taxes for the support of the government according to his actual worth in real and personal property," and that the provision of the Act of 1890 would result in, unequal taxation. This precise question was directly passed upon in the case of the *County Commissioners of Prince George's County* v. *Laurel,* 51 Md. 457, and the validity of a similar provision was there sustained, JUDGE IRVING saying: "It has never been decided by this Court that the XV Article of the Bill of Rights was applicable to any taxation except that for the support of the State Government, but that if it was held as applicable to municipal governments it is hard to see how inequality of taxation would result from the operation of the 19th section of the Act of Incorporation, it only provides that:

such taxes as are levied on the inhabitants or property in the
town of Laurel for road purposes shall be expended on par-
ticular roads, it by no means establishes unequal taxation but
bestows the taxes collected in a particular locality on the roads
of that locality." The conclusion in this case is claimed to
have been modified or its value destroyed by the language
used by the same judge in a case between the same parties,
though arising out of a different Act, and reported in 70 Md.
443. An examination of the latter case, however, discloses a
wide distinction between the two cases, and the immediate
question of the correctness or incorrectness of the conclusion
reached in 51 Md. was in no wise essential to the determina-
tion of the subsequent case, nor was that conclusion in any
way modified. Substantially the same question has arisen in
other States, and the conclusion of JUDGE IRVING in 51 Md.
has been adopted, though for different reasons than those as-
signed by him. In the case of the Board of Supervisors of
*Sangamon County* v. *The City of Springfield,* 63 Ill. 66, it
was held that the revenues of a county are not the property
of the county in the sense in which the revenue of a private
corporation is regarded, and that the power of the Legislature
in regard to them is plenary, and that an Act providing for
an apportionment between a county and a city of the moneys
raised by taxation, does not contravene the constitutional pro-
vision with regard to equal and uniform taxation. In the
case of the *Duval County Commissioners* v. *Jacksonville,* 36
Fla. 196, 29 L. R. A. 416, there was presented almost an
exact counterpart of the present case, and it is there said,
quoting from the *State* v. *Putnam County Commrs.,* 23 Fla.
632, "though all public roads and streets are public high-
ways, yet neither all public highways nor all public roads are
streets or city or town highways." Or to express it a little
differently, the streets and highways of a city are no less
public highways of the county, because they happen to lie
within the corporate limits of a municipality, and in *Sang-
amon County* v. *Springfield, supra,* it is said, that the turn-

ing over of one-half of the money raised from the property in the towns and cities does not destroy the equality and uniformity of the tax itself. The levy is made upon all the taxable property of the county just as any other tax is assessed and levied, and all the property in the county bears an equal portion of the burden of such tax in proportion to its value. Three cases in Missouri were cited by the appellant in support of its contention on this ground, but they do not meet the question involved. In *Wells* v. *Weston,* 22 Mo. 384, the question was whether the Legislature could authorize a municipal corporation to levy a tax for its own local purposes on land lying beyond the corporate limits; here the issue is whether the Legislature can direct the application of money raised by taxation upon property inside of corporate limits in some proportion to defray certain specified expenses within those same limits. In the *City of St. Charles* v. *Nolle,* 51 Mo. 122, the question was the validity of a city ordinance imposing a license tax on wagons used to haul into or out from the city, and it was held, and held only that there was no corporate power to pass such an ordinance, and that the Legislature could give the City Council no authority to pass such an ordinance, since in that case also the attempt would be to tax those residing without the city, purely for the municipal benefit. In the *Town of Cameron* v. *Stevens,* 69 Mo. .372, the question presented was as to the power of an incorporated town to levy a tax upon the land outside of the corporate limits for town purposes. Cases of this character, therefore, are in no way pertinent to the question now presented, and the objections to the Act of 1890, based on its supposd unconstitutionality cannot prevail.

The next point of objection urged against giving effect to the Act is that even if it shall be held to be constitutional, it has been repealed by subsequent legislative enactments. A number of different Acts are relied upon as producing this result. Before considering these it is important to see just what has been done in each of the years to be affected. In

making up the tax rate for the year 1908 for the Seventh Election District there were two items which enter into the present controversy, one of nine cents upon each $100 valuation for "large bridges and main roads," and twelve cents for roads; in 1909 the same two items appear and for the same amounts; in 1910, the same items and amounts; in 1911, the same two items appear, but the amounts are six cents for each $100 valuation for "Large bridges and main roads" and ten cents for roads. The reason for the two separate items is to be found in the provisions of Chapter 365 of the Acts of 1906, an Act the purpose of which was to provide a general road system for Carroll County. By section 137 of the local laws as fixed by that Act, two funds were provided for, one a special road fund to be used in the annual repair of the public roads and bridges in the county from the amount collected from the levy in each road district and to be expended by road commissioners under the direction of the County Commissioners; the other a levy for a general road fund to be used in the construction of all bridges costing over $100 and the special permanent improvement to or temporary repairs of such main roads in the county, as they may deem advisable. This latter fund it appears from the evidence has been construed to be applicable for "large" bridges and the permanent improvement or temporary repairs of what are commonly known as Shoemaker roads, that is, roads built under the Act of 1904, Chapter 225, and this construction of the law seems reasonable and proper.

The earliest in point of time of the Acts which are urged as operating to repeal the Act of 1890, is the Act of 1892, Chapter 164. By this Act radical changes were made in the previously existing law of the county in relation to roads, and altering in important particulars the powers of the County Commissioners with relation thereto; most important in this connection was the power given to the Road Commissioners to determine and fix the rate of the tax to be levied for road purposes, but the levying of the tax was still left with the County Commissioners. Section 2 of the Act was in these

words: "That all Acts or parts of Acts inconsistent with the
provisions of this Act, *except Chapter* 508 *of the Laws of*
1890 be and the same are hereby repealed. This Act did not
expressly repeal the Act of 1890, but re-affirmed it in unmis-
takable terms. There can be no question as to the legislative
intent in the adoption of the Act of 1892, and as repeals by
·implication are not favored it would be doing unwarrantable
violence to the Act of 1892 to construe it as operating to re-
peal the Act of 1890. Nor was any such effect ascribed to it
either by the County Commissioners of Carroll County or the
officials, of the City of Westminster, for in each year there-
after down to the institution of this suit the sum of $800 was
·demanded and collected from the County Commissioners
under the understanding apparently arrived at in 1891.

The roads of Carroll County then enjoyed a rest from legis-
lation down until the enactment of the Shoemaker law in
1904.· In that Act the attempt was to deal in a general com-
prehensive manner with county roads throughout the State.
But it dealt only with general provisions, and section 15 of
that Act declared that "nothing in this Act shall be taken to
alter or abridge or in any way affect the present method of
road construction or repair by the respective counties at their
own expense or otherwise as now authorized by law." Clearly
there was no endeavor here to repeal local enactments provid-
ing for the apportionment of moneys raised by taxation for
road construction or repair in the several counties, nor did
that Act attempt or pretend to interfere with legislation to
regulate these matters within the territorial limits of incor-
porated cities or towns.

Next in sequence was the.Act of 1906, Ch. 365. By this the
Act of 1892 was repealed, together with some of the other pro-
visions of the local laws of Carroll County relating to roads,
and a new and general road system adopted for the county.
It is unnecessary to quote or even abstract the provisions of
that Act, for in the case of this law, as in the Act of 1892,
the repealing portion of the Act expressly excepted all such
acts "as relate to the payment of a portion of the special road
tax to incorporated towns."

Before concluding this phase of the case, it is proper to mention that the Charter of the City of Westminster was repealed and re-enacted by Chapter 341 of the Acts of 1910, and by the third section of that Act it was specially enacted that certain local laws affecting the municipality "are hereby declared not to be repealed or affected by this Act, and are to be and remain in force as fully as though herein at large set forth," and the second Act contained in this enumeration is "Chapter 508 of 1900 (1890) relating to the road tax." Attention is called to this for the purpose of showing that throughout the changing legislation of twenty years, ran the consistent purpose and intent of leaving untouched and unaffected the provision made in 1890 for the apportionment of the road tax.

Defense to the bill was also taken by the County Commissioners upon the subject of bridges, and while not absolutely essential to the disposition of the case, a few observations upon this can hardly be out of place in view of the insistence placed on it by the counsel for the appellant.

The question is one which necessarily divides itself into two parts, that relating to what are called small bridges, i. e., bridges costing less than $100 for contruction or repair, and "large" bridges, or bridges the cost of which exceeded that sum. Is the City of Westminster under the terms of the Act of 1890 entitled to any portion of the sums collected under the levy for bridges of either class? The Act of 1890 makes no mention whatever of any bridges of any sort, and ordinarily this would be taken as limiting the right of participation on the part of the City to the funds realized from the levies for road purposes only. From the testimony of Mr. Dodrer, the County Treasurer and Clerk of the County Commissioners. it appears that in 1891 and 1892 there were separate sums levied for roads and for bridges, that in 1893, 1894, 1895, 1896, 1897, 1898, 1899, 1900 and 1901 there were levies made for roads, but none for bridges. In 1902, 1903, 1904 and 1905 there was one levy for roads and one for large bridges, and for the year 1906, 1907, 1908, 1909, 1910 and

1911, the levy was in the dual form, one for large bridges and main roads, and one for roads. It will be observed, therefore, that in no year since 1892 has there been any levy distinctively made for small bridges, and the contention of the County Commissioners now is that no separate account has been kept of the cost of such small bridges, and there being no separate and distinct levy therefor, it is impossible to segregate from the levy for roads the actual or proper proportion of the amount raised by taxation, and which has been expended upon the construction of such small bridges. The reason for this is perfectly evident, namely, that a so-called small bridge the construction or repair of which involved the expenditure of a less amount than $100 was not deemed or regarded as being in a true sense a bridge expenditure, but merely one of the expenses necessarily incident to the construction and repair of a road, and constituting in reality a portion of the road; thus if for purposes of drainage it was or became necessary to construct a culvert which might consist of three planks, or 30 or 40 feet of terra-cotta pipe, the expense of which would be but trifling, in one sense such construction might be classed as a small bridge, and yet it was simply a matter necessarily incident to road maintenance, and proper to be included as a portion of the road expenditure. While there is no direct testimony upon the point it is a self evident fact that a "bridge" the cost or repair of which was less than $100, could not be any extensive structure, certainly not one involving ponderous arches of masonry or reinforced concrete, or of steel construction. At most a structure to come within the limits of such an expenditure could be but a span of a few feet or yards in width, crossing some country brook or creek-bed, and in reality hardly worthy of being dignified by the name of a bridge; being placed there, it may well have been more as a matter of grading than for any other purpose, and therefore, to have been properly dealt with under the general language employed in the various successive levies which were made of roads. Viewed in this light it was immaterial and unnec-

essary that there should have been kept any separate and distinct account in the nature of an account for small bridges, and since the levy was made in the years with which this case is immediately concerned, were levies for roads, the City of Westminster ought to be and was entitled to the proportion granted to it by the Legislature of the amount realized from the levy for roads.

A somewhat different situation is presented with regard to the other item in the levy, that "for large bridges and main roads." This appears in the levies of the County Commissioners, as has already been pointed out, as the direct result of the Act of 1906, an Act not passed until sixteen years after the Legislature had provided for the apportionment between the County Commissioners and the City of Westminster of the money received by taxation for road purposes in the Seventh District of Carroll County. It was not, therefore, an item within the contemplation of the Legislature at the time when the Act of apportionment was passed, and there may be fairly presented for argument the question whether the City of Westminster is entitled to participate at all in this portion of the levy. The most satisfactory decisions bearing upon this question, seem to be those which have come before the Courts of Florida, and which are well collected in the case of the *Duval County Commissioners* v. *Jacksonville, supra,* and as most pertinent to the present consideration is the case of *Skinner* v. *Henderson,* 26 Fla. 121, 8 L. R. A. 55. In that case the City of Tampa had entered into a contract for the construction of a bridge over a river within the corporate limits of the City, and the County Commissioners on petition for that purpose, ordered that a portion of the costs of the bridge be paid by the county. The payment of the money by the county was enjoined, and the bill filed for this purpose alleged, among other things, that the bridge was wholly within the corporate limits, entirely a municipal improvement, and not for a county purpose. A demurrer was filed to the bill, the effect of which was of course to admit as true this allegation, and the Court says,

that the statute authorizing the City to build bridges within its limits did not necessarily revoke the authority given to the county by general statute, without restriction as to locality, to build a bridge within the City limits. As there may be bridges serving only a city purpose, so there may be others demanded in the same territory for county purposes, and where the circumstances create this demand and the bridge is for the use and benefit of the people of the county at large, or of some considerable portion of them, and intended and needed as well for those outside as for those inside the city, the authority of the county to build is not annulled by the local city statute. If now the reasoning of this case be applied to the one before us, it will follow that there may be a bridge constructed in the City of Westminster costing in excess of $100 the use or advantage of which is practically for the use and benefit of the residents of the municipality only, and in such a case, in view of the history of the legislation, it is difficult to see how any charge therefor could or ought to be imposed upon the county, to be defrayed out of the proceeds of a levy for large bridges and main roads. On the other hand, a case may arise for the construction of a bridge costing in excess of $100, the use and benefit of which is for the benefit not merely of the inhabitants of the City of Westminster, but for that of the people of the county at large, or of some considerable portion of them, and intended and needed as well for them as for residents or property holders within the corporate limits. This fact would not, however, justify a claim on the part of the City of Westminster for the one-half part of the proceeds of this particular portion of the levy, although it might afford a good ground for some fair and equitable sharing of the costs of construction or maintenance. That, however, would be a matter for contract and agreement between the municipal authorities of Westminster and the County Commissioner of Carroll County, and it is not necessary to be considered in disposing of the present case.

This view is further supported by the provisions of the Road Law of Carroll County, section 137, as enacted by Chapter 365 of the Acts of 1906, and by section 2 of the same Act.

Section 137 of the Road Law is the provision under which the County Commissioners derive their authority to make a levy for the two separate road funds, the first of which is designated as a *"special road fund,"* and the other as *"a general road fund,"* the first to be applied generally to roads and small bridges, and the latter to bridges costing over $100, and special improvements of main roads. By section 2 of the Act, which preserves the provisions with regard to incorporated towns, the right of such towns is expressly limited to "a portion of the special road tax," that is, to the fund first provided for in section 137, and which by the terms of the Act is to be applied to roads and small bridges costing less than $100.

Apparently much of the contention in the Circuit Court for Carroll County rested upon the question of limitations or laches, the effect of which was to exclude entirely from consideration any question of accounting or liability upon the part of the County Commissioner for unpaid portions of the taxes collected from the time of the passage of the Act in 1890 down to 1908. These questions were elaborately considered in the opinion of the Circuit Court and fully passed upon, and from the rulings made thereon no appeal was taken upon the part of the city and consequently cannot properly be considered as open to review by this Court. Such questions are not open as to the period between 1908 and the institution of this suit, except in so far as an estoppel by Acts *in pais* may be regarded as entering into the question of laches, but upon this we concur entirely with the views expressed by JUDGES THOMAS and FORSYTHE, and, therefore, no reversal can be had upon this ground.

From what we have said it follows that the decree of the Circuit Court for Carroll County will be affirmed.

*Affirmed, with costs to the appellee.*