GEORGE P. REINHARDT *v.* ANNE ARUNDEL
COUNTY ET AL.

[No. 645, September Term, 1975.]

*Decided May 5, 1976.*

*Edwin J. Wolf,* with whom were *Archibald Eccleston, III* and *Eccleston, Seidler & Miller* on the brief, for appellant.

*John M. Court, Assistant County Solicitor* and *Eugene M. Lerner, City Attorney,* with whom was *Michael R. Roblyer, County Solicitor* on the brief, for appellees.

MENCHINE, J., delivered the opinion of the Court.

George P. Reinhardt (appellant) filed an amended bill for declaratory decree in the Circuit Court for Anne Arundel· County against Anne Arundel County; the County Executive of Anne Arundel County and the Mayor and Aldermen of the City of Annapolis. The bill of complaint mounted a. scattergun attack upon Code Article 81, § 411C (1975 Repl. Vol.) and· an Anne Arundel County Ordinance codified as § 17-710 of the Anne Arundel County Code on constitutional· and other grounds.

### The Statute

Code Article 81, § 411C (1975 Repl. Vol.) is the tax enabling act upon which the ordinance depends for validity.

At the time of trial in the Circuit Court for Anne Arundel County the statute read as follows:

"§ *411C. Additional taxing power in Anne Arundel County; disposition of revenues collected in City of Annapolis.*

(a) The County Council for Anne Arundel is hereby empowered and authorized, by ordinance, enacted from time to time pursuant to its legislative procedure, to levy, impose, and collect a sales or use tax upon fuels and utilities used by commercial and industrial businesses; residential, commercial and industrial telephone service; and space rentals. The tax rate on fuels, utilities and telephone services shall not be greater than 8%. The tax rates on, and classes of space rentals shall not be greater than those rates and classes in effect January 1, 1973, as specified by the ordinances of Anne Arundel County. The exemptions from the sales or use tax upon fuels and utilities used by commercial and industrial businesses in effect January 1, 1973 as specified by the ordinances of Anne Arundel County shall not thereafter be revoked or reduced except by action of the General Assembly.

(b) Any revenues collected under the authority of this section within the boundaries of the City of Annapolis shall be allocated and distributed in equal amounts to the City of Annapolis and to Anne Arundel County." [1]

1. Under the terms of Ch. 853, § 2 of the Acts of 1973, § 411C would have expired on July 1, 1975. Ch. 616 of the Acts of 1975, however, repealed and reenacted the section as follows:

"(a) The County Council for Anne Arundel may by ordinance, enacted from time to time pursuant to its legislative procedure, levy, impose, and collect a sales or use tax upon fuels and utilities used by commercial and industrial businesses; residential, commercial and industrial telephone service; and space rentals.

(b) Any revenues collected under the authority of this section within the boundaries of the City of Annapolis shall be allocated

## The Ordinance

Section 17-710 [2] of the Anne Arundel County Code imposed a tax upon income derived from space rental for docking and storage of boats and reads as follows:

"Sec. 17-710. *Tax on docking and storing boats.*

(a) (1) There is hereby levied and imposed a tax of ten per cent (10%) of any charges or other consideration paid or received in exchange for the use of services or facilities (including, but not limited to, marina or boat slip facilities, space rentals, and docking and storage areas) for the purpose of docking or storing boats. If said services or facilities are offered in conjunction with other services or facilities, said tax shall apply only to the portion of consideration derived from space rental, docking or storage.

(2) Notwithstanding any provision to the contrary, said tax shall not be levied or imposed upon the following:

(i) Community-owned pier facilities.

(ii) Sales to the United States of America; provided, however, that nothing contained in this section shall be construed to exempt any instrumentality or agency of the United States of America which is subject to the taxing power of Anne Arundel County, Maryland, from taxation hereunder.

(iii) Sales to embassies and diplomatic services as approved by the State Department of the United States of America.

---

and distributed in equal amounts to the City of Annapolis and to Anne Arundel County."
Under Ch. 616, § 2 the power to tax was extended to July 1, 1977.

2. § 17-710 was initiated as Council Bill No. 35-71; was twice reenacted in substantially the same form by Bill No. 49-73 and Bill No. 34-75.

(b) For purposes of this section, the below listed terms shall be defined as hereinafter set forth:

(1) 'Nonprofit, community-owned pier' — Piers or recreational land which is held in common by every lot owner in a subdivision or community, excluding piers owned by an organization comprised of members not necessarily within a subdivision or community who each own an interest in the pier facility as a result of their membership in the organization.

(2) 'Person' — Any individual, partnership, firm, society, club, association, joint stock company, corporation, estate, receiver, trustee, assignee, referee or any other person acting in a fiduciary or representative capacity and any other group or combination of individuals acting as a unit.

(3) 'Taxpayer' — Any person required by this section to make returns or to pay the tax.

(4) 'User' — Any person making use of services and/or facilities for keeping, storing or docking boats.

(c) (1) Every person who offers services or facilities for the storage or docking of boats shall collect said tax from the user of said services or facilities, and report and remit the same as hereinafter provided. The person offering the use of said services or facilities shall have the same right against the user thereof for the collection of said tax as he has for the collection of charges for other services or facilities.

(2) Every person required to collect said tax shall file a return thereof and the remittance with the controller by the twenty-fifth (25th) day of the month next succeeding said collection; any person who fails to collect or remit said tax shall become personally liable therefor.

(3) Any taxpayer failing to file any return

and/or pay the tax imposed by this section within the time limited therefor, shall be assessed the amount of tax due, plus interest at the rate of one-half of one per centum ($^1/_2$ of 1%) per month and a penalty of ten per centum (10%) of the tax due.

(4) If any taxpayer has erroneously, illegally or unconstitutionally paid the tax imposed by this section, the controller shall refund said tax if, within three (3) years from the payment thereof, written application stating the grounds for such refund is filed with the controller.

(d) (1) Every owner, operator and user of such services and facilities shall keep complete and accurate records of all payments and receipts for such services and facilities together with a record of the tax collected thereon; and they shall keep all invoices and such other pertinent records and documents as are necessary to determine the amount of tax due. Such records and other documents shall be open at all times during business hours for inspection and examination by the controller or other duly authorized representatives, agents or employees of Anne Arundel County, Maryland.

(2) If any taxpayer fails to keep records from which the tax imposed by this section may be accurately computed, the controller may make use of a factor developed by surveying other taxpayers of the same type or otherwise compute the amount of tax due and there shall be a rebuttable presumption that said computation is correct.

(e) Any person who wilfully fails to collect the tax imposed by this section, who wilfully fails to pay over to the controller the tax imposed thereby, who wilfully fails to file a return required in connection with said tax, who wilfully makes any false statement or misleading omission in any such return or who wilfully fails to keep complete and

proper records as required by law shall be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than one thousand dollars ($1,000.00) or be imprisoned for not more than six (6) months, or both, in the discretion of the court, for each and every such offense."

### The Status of Appellant and the Proceedings Below

The appellant alleged that he was the owner of a motorboat documented under United States Statutes that was docked in a slip at the White Rocks Marina on Rock Creek, a navigable body in Anne Arundel County, Maryland. He alleged that he and all motor and sailboat owners who secure their boats at public or private facilities where a rental charge is collected have been required to pay the tax imposed upon such charges by § 17-710.

Appellant sought: (a) a declaration that the statute and ordinance are unconstitutional, illegal and void and (b) injunctive relief forbidding their enforcement.

The chancellor sustained demurrers by the appellees and declared the statute and ordinance to be valid and constitutional.[3] We shall affirm for the reasons hereafter stated.

### The Attack Under the Constitution of the United States

(a) Attack upon Art. 81, § 411C

### The Fourteenth Amendment

Appellant contends that § 411C "is void for vagueness under the Fourteenth Amendment," in that "[t]he term space rentals is not defined in the Act."

---

3. Demurrers to the original bill of complaint seeking the same relief previously had been sustained and an appeal taken to the Court of Appeals of Maryland. That appeal was dismissed as premature and the case remanded pursuant to Maryland Rule 871 to permit appellant "to amend his Bill of Complaint to set forth with clarity and specificity, those averments pertaining to the constitutionality of [the Statute and Ordinance]." Reinhardt v. Anne Arundel County, et al, No. 121, September Term, 1974, filed January 29, 1974 (unreported).

Words used in statutes generally are not specially defined. In such cases the words used should be construed as having their ordinary and accepted meaning. *Scoville Service, Inc. v. Comptroller,* 269 Md. 390, 393-94, 306 A. 2d 534, 537 (1973).

In Webster's Third New International Dictionary, Unabridged (1971) the words are thus defined:

"Space — 2a: a limited extension in one, two, or three dimensions: a part marked off or bounded in some way."

"Rental — 2: an amount paid or collected as rent: income from rent: . . . return (as a sum of money) given or received as rent."

In *Richards Furniture Corp. v. Board of County Comm'rs of Anne Arundel County,* 233 Md. 249, 264, 196 A. 2d 621, 629 (1964), it was said:

" . . . [W]e do not find the statute vague or indefinite in a constitutional sense. It is unnecessary to elaborate upon this point in great detail. The Act is couched in plain and simple language, which may be easily understood by persons of ordinary intelligence. This is all that is required of a statute in order to prevent it from being vague and indefinite in a constitutional sense. *United States v. Alford,* 274 U. S. 264; *Connally v. General Const. Co.,* 269 U. S. 385; and the Note 'The Void-For-Vagueness Doctrine in the Supreme Court,' 109 Penn. L. Rev. 67."

When the previously defined words are considered in the combined form in which they were used in the statute, the legislative purpose is plain. We see no unconstitutional vagueness in the subject statute.

## Article I

Appellant contends that § 411C violated certain sections of Article I of the United States Constitution:

Section 8, Clause 3 — "To regulate Commerce

|  | with foreign Nations, and among the several States and with the Indian Tribes." |
| Section 9, Clause 6 — | "No Preference shall be given by any Regulation of Commerce or Revenue to the Ports of one State over those of another: nor shall Vessels bound to, or from, one State, be obliged to enter, clear, or pay Duties in another." |
| Section 10, Clause 3 — | *"No State shall, without the Consent of Congress, lay any Duty of Tonnage,* keep Troops, or Ships of War in time of Peace, enter into any Agreement or Compact with another State, or with a foreign Power, or engage in War, unless actually invaded, or in such imminent Danger as will not admit of delay." (Emphasis supplied to show part of clause upon which appellant relies.) |

Maryland Code Article 81, § 411C is simply a grant of power to Anne Arundel County. It impedes commerce in no respect. It imposes no duty or tax. The statute does not infringe upon these provisions of the Constitution. With respect to Section 9, Clause 6, it should be noted, as the court below pointed out, the "provision operates only as a limitation of the powers of Congress, and in no respect affects the States in the regulation of their domestic affairs. *Munn v. Illinois,* 94 U.S. 113, 135."

(b) Attack upon Anne Arundel Code § 17-710

## The Fourteenth Amendment

Appellant contends that § 17-710 denies him equal protection of law in that the ordinance "by its express terms, exempts non-profit and/or community owned pier facilities. This result clearly discriminates against both commercial pier facilities, and non-residents of Anne Arundel County."

In *Allied American Co. v. Comm'r of Motor Vehicles*, 219 Md. 607, 150 A. 2d 421 (1959), it was said at 623 [431]:

> "The constitutional need for equal protection does not shackle the legislature. It has the widest discretion in classifying those who are to be regulated and taxed. Only if the grouping is without any reasonable basis, and so entirely arbitrary, is it forbidden. Abstract symmetry or mathematical nicety are not requisites. The selection need not depend on scientific or marked differences in things or persons or their relations. If any state of facts reasonably can be conceived that would sustain a classification, the existence of that state of facts as a basis for the passage of the law must be assumed. The burden is on him who assails a classification to show that it does not rest on any reasonable basis."

The Court added at 624 [432]:

> "If the classification made by the Legislature is otherwise justified, there can be no sound complaint that the legislative purpose might be better or more fully achieved by other or more expansive and inclusive classification."

In *State Board of Tax Commissioners of Indiana v. Jackson*, 283 U. S. 527, 51 S. Ct. 540, 75 L. Ed. 1248 (1931), it was said at 537 [543] [1255]:

> " "* * * The power of taxation is fundamental to the very existence of the government of the States. The restriction that it shall not be so exercised as to deny to any the equal protection of the laws does

not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings, or occupations * * *.' "

In *Fair Lanes, Inc. v. Comptroller*, 265 Md. 361, 289 A. 2d 595 (1972), it was said at 367 [599]:

"The trend in the opinions of the Supreme Court of the United States since the 1931 opinion in *Jackson* has been toward sustaining the power of the States to make valid classifications for purposes of taxation against attacks based upon the Fourteenth Amendment prohibition of a denial of equal protection of the laws." (Citations omitted.)

*See also: National Can Corp. v. State Tax Comm'r of Md.*, 220 Md. 418, 153 A. 2d 287 (1959), appeal dismissed 361 U. S. 534, 80 S. Ct. 586, 4 L.Ed.2d 538 (1960); *Brown v. State*, 177 Md. 321, 330, 9 A. 2d 209, 213 (1939).

The classification made by the County Council in enacting § 17-710 was reasonable.

## *Article I*

Although appellant had alleged in his bill of complaint that § 17-710 was in violation of Section 8, Clause 3; Section 9, Clause 6; and Section 10, Clause 3, *supra*, his attack in this Court under Article I is limited to a claim of unconstitutionality under Section 10, Clause 3, *supra*.

### *Section 10, Clause 3 (Duty Upon Tonnage)*

Essentially, the appellant relies upon two Supreme Court cases: *Cannon v. New Orleans*, 87 U. S. 577, 22 L. Ed. 417 (1874); and *Clyde Mallory Lines v. Alabama*, 296 U. S. 261, 56 S. Ct. 194, 80 L. Ed. 215 (1935). Both may be distinguished by limitations expressed in the opinions themselves.

In *Cannon, supra*, wherein a tax was held unconstitutional as a tonnage tax it had been said at 581 [419]:

"Whatever more general or more limited view may

be entertained of the true meaning of this clause, it is perfectly clear that a duty or tax or burden imposed under the authority of the State, which is, by the law imposing it, to be measured by the capacity of the vessel, and is in its essence a contribution claimed for the privilege of arriving and departing from a port of the United States, is within the prohibition."

This language must be considered in the light of the facts to which it was applied. The Supreme Court had preceded the quoted words by saying at 580-81 [419]:

"It is in proof that of the twenty miles and more of the levee and banks of the Mississippi within the City, not more than one tenth has any wharf, and that vessels land at various places where no such accommodations exist. The language of the ordinance covers landing anywhere within the city limits. The tax is, therefore, collectible for vessels which land at any point on the banks of the river, without regard to the existence of the wharves. The tax is also the same for a vessel which is moored in any part of the Port of New Orleans, whether she ties up to a wharf or not, or is located at the shore or in the middle of the river. A tax which is, by its terms, due from all vessels arriving and stopping in a port, without regard to the place where they may stop, whether it be in the channel of the stream, or out in the bay, or landed at a natural river bank, *cannot be treated as a compensation for the use of a wharf.* This view is additionally enforced if, as stated by counsel for the plaintiff, in their argument, the Supreme Court of the State has decided that under the Act of 1843, of the Louisiana Legislature, no wharfage tax or duty can be levied or collected by the City.

"We are of opinion that, upon the face of the ordinance itself, as applied to the recognized condition of the river and its banks within the City,

*the dues here claimed cannot be supported as a compensation for the use of the City's wharves,* but that it is a tax upon every vessel which stops, either by landing or mooring, in the waters of the Mississippi River within the City of New Orleans, for the privilege of so landing or mooring.

"In this view of the subject, as the assessment of the tax is measured by the tonnage of the vessel, it falls directly within the prohibition of the Constitution, namely: 'That no State shall, without the consent of Congress, lay any duty of tonnage.' " (Emphasis added.)

In *Mallory, supra,* it had been said at 265-66 [196] [218]:

"* * * [T]he prohibition against tonnage duties has been deemed to embrace all taxes and duties regardless of their name or form, and even though not measured by the tonnage of the vessel, which operate to impose a charge for the privilege of entering, trading in, or lying in a port."

The Supreme Court went on to explain, however, at the same page:

"But it does not extend to charges made by state authority, even though graduated according to tonnage, for services rendered to and enjoyed by the vessel, such as pilotage, Cooley v. Board of Wardens, supra, or wharfage, Keokuk Northern Line Packet Co. v. Keokuk, supra; Northwestern Union Packet Co. v. St. Louis, 100 U. S. 423, 25 L. Ed. 688; Cincinnati, P. B. S. & P. Packet Co. v. Catlettsburg, 105 U. S. 559, 26 L. Ed. 1169; Parkersburg & O. River Transportation Co. v. Parkersburg, 107 U. S. 691, 2 S. Ct. 732, 27 L. Ed. 584; Ouachita & M. River Packet Co. v. Aiken, 121 U. S. 444, 7 S. Ct. 907, 30 L. Ed. 976, or charges for the use of locks on a navigable river, Huse v. Glover, supra, or fees for medical inspection, Morgan's Louisiana & T. R. & S. S. Co. v. Board of Health, 118 U. S. 455, 6 S. Ct. 1114, 30 L. Ed. 237.

The Supreme Court in *Keokuk N. L. Packet Co. v. Keokuk,* 95 U. S. 80, 24 L. Ed. 377 (1877), thus explained the nature of the judicial inquiry to determine whether an ordinance is violative of this section, saying at 84-85 [380]:

> "* * * To determine whether the charge prescribed by the ordinance in question is a duty of tonnage, within the meaning of the Constitution, it is necessary to observe carefully its object and essence. If the charge is clearly a duty, a tax or burden, which in its essence is a contribution claimed for the privilege of entering the port of Keokuk, or remaining in it, or departing from it, imposed as it is, by authority of the State and measured by the capacity of the vessel, it is, doubtless, embraced by the constitutional prohibition of such a duty. But a charge for services rendered or for conveniences provided is in no sense a tax or a duty. It is not a hindrance or impediment to free navigation. The prohibition to the State against the imposition of a duty of tonnage was designed to guard against local hindrances to trade and carriage by vessels, not to relieve them from liability to claims for assistance rendered and facilities furnished for trade and commerce."

After pointing out, at 87 [381] that:

> "What was intended by the provisions of the second clause of the tenth section of the first article was to protect the freedom of commerce, and nothing more. The prohibition of a duty of tonnage should, therefore, be construed so as to carry out that intent."

the Supreme Court declared at 88 [381]:

> "In Cooley v. The Board of Port-Wardens, 12 How. 299, this court recognized a clear distinction between wharfage and duties on imports or exports or duties on tonnage. Referring to the 2d [sic] paragraph of section 10, art. I., of the Constitution,

Curtis, J., speaking for the court, said: 'This provision of the Constitution was intended to operate upon subjects actually existing and well understood when the Constitution was formed. Imposts, and duties on imports, exports and tonnage, were then known to the commerce of the civilized world to be as distinct from fees and charges for pilotage, and from the penalties by which commercial States enforced their laws, as they were from charges of wharfage or towage, or any other local port charges for services rendered to vessels or cargoes, and to declare that such pilot fees or penalties are embraced within the words imposts, or duties on imports or exports, or tonnage, would be to confound things essentially different, and which must have been known to be actually different by those who used this language. * * * It is the thing and not the name that is to be considered.'

"For these reasons, we hold that the ordinance cannot be considered as imposing a duty of tonnage, and what we have said is sufficient to show that most of the other objections of the plaintiffs in error to its validity have no substantial foundation. It is in no sense a regulation of commerce between the States, nor does it impose duties upon vessels bound to or from one State to another, nor compel entry or clearance in the port of Keokuk; nor is it contrary to the compact contained in the ordinance of 1787, since it levies no tax for the navigation of the river; nor is it in conflict with the act of Congress respecting the enrollment and license of vessels for the coasting trade. All these objections rest on the mistaken assumption that port charges, and especially wharfage, are taxes, duties and restraints of commerce."

In the subject case, the boat owner is not compelled to subject himself to the tax. He continues to have access to the

navigable waters of the State and to the ports of the City of Annapolis and Anne Arundel County.

The tax imposed by § 17-710 is not a tax upon the "privilege of entering, trading in, or lying in a port." *Clyde Mallory Lines v. Alabama, supra.* The ordinance applied a tax in the form of a percentage of rental fees collected by commercial dock owners from boat owners who choose to use their facilities. The ordinance imposes no requirement on the boat owner to pay a tax unless he uses a commercial dock facility. In sum, the subject ordinance does not impose restrictions upon movement upon navigable waters; or impair the entry of vessels into ports or restrain or impede interstate commerce. Rather, it is imposed only upon boat owners who use physical facilities within Anne Arundel County that have been provided for their service and convenience. *Union Barge Line Corp. v. Marcum,* 360 S.W.2d 130, 132 (C. of A. Ky. 1962).

We find no infringement of Article I of the Constitution.

### The Attack Under the Maryland Constitution

#### Article 15 Declaration of Rights [4]

Appellant, relying upon *County Comm'rs of Anne Arundel County v. English,* 182 Md. 514, 35 A. 2d 135 (1943), contends that the tax imposed by § 411C and § 17-710, both *supra,* upon income derived from "space rentals" is a tax on property and as such is constitutionally infirm as lacking the uniformity required by Article 15.

---

4. Article 15

"That the levying of taxes by the poll is grievous and oppressive and ought to be prohibited; that paupers ought not to be assessed for the support of the government; that the General Assembly shall, by uniform rules, provide for the separate assessment, classification and sub-classification of land, improvements on land and personal property, as it may deem proper; and *all taxes thereafter provided to be levied by the State for the support of the general State Government, and by the Counties and by the City of Baltimore for their respective purposes, shall be uniform within each class or sub-class of land, improvements on land and personal property which the respective taxing powers may have directed to be subjected to the tax levy;* yet fines, duties or taxes may properly and justly be imposed, or laid with a political view for the good government and benefit of the community."

We do not see § 411C as imposing a property tax. Neither is it discriminatory or lacking in uniform application. *Villa Nova v. Comptroller*, 256 Md. 381, 260 A. 2d 307 (1970).

### Article 23 Declaration of Rights [5]

The purpose subserved by Article 23 has been equated with the due process provisions of the Fourteenth Amendment. *Oursler v. Tawes*, 178 Md. 471, 13 A. 2d 763 (1940).

Appellant's contention that § 411C offends against this Article is rejected for the reasons hereinbefore given in the discussion of the Fourteenth Amendment, *supra.*

### Article III, Sections 29 [6] and 33 [7]

We see no titling defect under Section 29.

---

5. Article 23

"That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

6. Section 29

"The style of all Laws of this State shall be, 'Be it enacted by the General Assembly of Maryland:' and all Laws shall be passed by original bill; and every Law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title; and no Law. nor section of Law, shall be revived, or amended by reference to its title, or section only; nor shall any Law be construed by reason of its title, to grant powers, or confer rights which are not expressly contained in the body of the Act; and it shall be the duty of the General Assembly, in amending any article, or section of the Code of Laws of this State, to enact the same, as the said article, or section would read when amended. And whenever the General Assembly shall enact any Public General Law, not amendatory of any section, or article in the said Code, it shall be the duty of the General Assembly to enact the same, in articles and sections, in the same manner, as the Code is arranged, and to provide for the publication of all additions and alterations, which may be made to the said Code."

7. Section 33

"The General Assembly shall not pass local, or special Laws, in any of the following enumerated cases, viz.: For extending the time for the collection of taxes; granting divorces; changing the name of any person; providing for the sale of real estate, belonging to minors, or other persons laboring under legal disabilities, by

372

Section 33 is not a special law. See: *Potomac Sand and Gravel Co. v. Governor*, 266 Md. 358, 293 A. 2d 241 (1972).

*Article XI-A*

Appellant mounts his attack against § 411C under Sections 2 and 4 of this Article.

The Sections read as follows:

2. "The General Assembly at its first session after the adoption of this amendment shall by public general law provide a grant of express powers for such County or Counties as may thereafter form a charter under the provisions of this Article. Such express powers granted to the Counties and the powers heretofore granted to the City of Baltimore, as set forth in Article 4, Section 6, Public Local Laws of Maryland, shall not be enlarged or extended by any charter formed under the provisions of this Article, but such powers may be extended, modified, amended or repealed by the General Assembly."

4. "From and after the adoption of a charter under the provisions of this Article by the City of Baltimore or any County of this State, no public local law shall be enacted by the General Assembly for said City or County on any subject covered by the express powers granted as above provided. Any law so drawn as to apply to two or more of the geographical subdivisions of this State shall not be deemed a Local Law, within the meaning of this Act. The term 'geographical sub-division' herein

executors, administrators, guardians or trustees; giving effect to informal, or invalid deeds or wills; refunding money paid into the State Treasury, or releasing persons from their debts, or obligations to the State, unless recommended by the Governor, or officers of the Treasury Department. And the General Assembly shall pass no special Law, for any case, for which provision has been made, by an existing General Law. The General Assembly, at its first Session after the adoption of this Constitution, shall pass General Laws, providing for the cases enumerated in this section, which are not already adequately provided for, and for all other cases, where a General Law can be made applicable."

used shall be taken to mean the City of Baltimore or any of the Counties of this State. (1914, ch. 416, ratified Nov. 2, 1915.)"

He argues that § 411C is invalid because it "attempts to extend, modify or amend the expressed powers of Article 25A, Section 5, and that such extension, modification or amendment cannot be accomplished by a public local law, but rather may only be accomplished by a public general law."

Section 411C had been initiated by Ch. 302 of the Acts of 1971. We do not see passage of that chapter as an act amending the Express Powers Act (Art. 25A). The Legislature, acting under Art. XI-A, § 2, *supra*, in enacting the Express Powers Act had granted a *limited* taxing power to Baltimore City and to those Counties of the State who elected to adopt a charter form of government. It did not surrender its right to enact local taxation legislation in areas not included within the Express Powers Act's grant of taxing power.

In *Baltimore v. State*, 15 Md. 376 (1860), it was said at 467:

". . . The power to levy taxes is a sovereign power, and unless committed to some portion of the people, may always be exercised by the Legislature. It is not to be considered as parted with by mere construction, and we have not been referred to any portion of the Constitution which divests it."

The Legislature in numerous instances has recognized its continuing sovereign power to enact local laws pertaining to taxation in charter counties as to matters not encompassed within the Express Powers Act.[8]

---

8. *See: e.g.*, 1975 Ch. 118 (Prince George's County)
   Ch. 896 (Prince George's County)
   1974 Ch. 383 (Prince George's County)
   Ch. 890 (Anne Arundel County)
   1973 Ch. 853 (Anne Arundel County)
   Ch. 867 (Baltimore County)
   Ch. 871 (Montgomery County)
   1971 Ch. 105 (Prince George's County)
   Ch. 331 (Montgomery County)
   Ch. 576 (Montgomery County)
   Ch. 738 (Prince George's County)

*Article XI-E*

Appellant suggests that § 411C violated Article XI-E of the Maryland Constitution, in that subsection (b) "allow[s] the City of Annapolis to impose a tax upon space rentals in the amount of one-half (¹/₂) of the tax imposed by Anne Arundel County.... Appellant contends that such legislative purpose cannot be accomplished by a 'public local law' and that to do so violates the clear meaning of Article XI-E of the Maryland Constitution." This issue was neither raised in his amended bill of complaint nor decided by the court below. We decline to pass upon it. Rule 1085.[9]

*Additional Contention*

*Natural Resources*

Appellant contends that the statute and ordinance impose a tax on water owned by the State in violation of the Maryland Code Natural Resources Article, and Code Article 81, § 9. We do not see it that way. Section 17-710 imposes the tax on "consideration paid or received in exchange for the use of services or facilities (including, but not limited to, marina or boat slip facilities, space rentals, and docking and storage areas) for the purpose of docking or storing boats."

We see no conflict in the several enactments.

> *Declaratory decree affirmed.*
> *Appellant to pay the costs.*

---

**9.** But *see:* Carroll County v. Westminster, 123 Md. 198, 203-04, 91 A. 412, 414-15 (1914).