## MONTGOMERY COUNTY, MARYLAND ET AL. *v.* MARYLAND SOFT DRINK ASSOCIATION, INC. ET AL.

[No. 14, September Term, 1977.]

*Decided September 13, 1977.*

*Motion for reconsideration filed October 10, 1977; denied October 21, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Nathan J. Greenbaum, Assistant County Attorney,* with

whom was *Richard S. McKernon, County Attorney*, on the brief, for appellants.

*Wallace E. Hutton*, with whom were *Hutton & Kalis* on the brief, for appellee Maryland Soft Drink Association, Inc. et al. and by *Roger W. Titus, City Attorney*, with whom was *Paul T. Glasgow, Assistant City Attorney*, on the brief, for appellee Mayor and Council of Rockville.

LEVINE, J., delivered the opinion of the Court.

The central issue presented in this case is whether a tax imposed upon non-returnable beverage containers by Montgomery County (the County) is a sales tax which the County was prohibited from enacting by state law. A group of plaintiffs consisting of trade associations, bottling companies and retail beverage dealers successfully challenged the tax by obtaining declaratory and injunctive relief in their favor in the Circuit Court for Montgomery County. The County appealed to the Court of Special Appeals, but we granted certiorari before the case was heard by that court. Since we disagree with the circuit court, we now reverse and remand.

To gain complete perspective in viewing this case, it is necessary that we begin, not with the enactment of the tax law in question, but with its predecessor, which also failed to survive a test in the circuit court. In 1975 the Montgomery County Council, after overriding a veto of the County Executive, enacted Bill No. 30-75, which imposed a "Beverage Container Tax" upon "every distributor who *sells* . . . beverages in non-reusable beverage containers . . ." at the rate of four cents for each container with a normal capacity up to and including 16 fluid ounces and nine cents for each container with a normal capacity in excess of 16 fluid ounces. (emphasis added.) The avowed purpose of that tax was "to derive from a major source of solid waste some of the revenue needed to fund public expenditures for the collection and disposal of solid waste." The tax was to become effective on March 1, 1976, and by its own terms was to expire on December 31, 1977; thereafter, apparently, it

was to be supplanted by a law imposing a deposit on non-reusable containers. Although Bill No. 30-75 was challenged on several grounds in an equity suit seeking injunctive and declaratory relief, the primary ground for the challenge there, as is also the case regarding the tax in controversy here, was that Bill No. 30-75 established a sales tax which the County was prohibited from imposing by state law. In striking down that tax, the chancellor rested his decision on that ground.

Within a matter of weeks, the County Council responded with Bill No. 14-76, imposing a tax upon "every distributor who *supplies* to a dealer in Montgomery County non-reusable beverage containers containing beverages" at the rate of two cents for each container with a normal capacity up to and including 16 fluid ounces and four cents for each container with a normal capacity in excess of 16 ounces. (emphasis added.) [1] "Dealer" is defined, in part, as a person engaging in "a retail business" and "Distributor" as one who, in part, "supplies beverages in beverage containers to a dealer in Montgomery County." The term "Beverage" is defined as "any beer, ale or other malt beverages, soft drinks, carbonated water and iced tea in liquid form intended for human consumption." The verb "supplies" is defined as the act of "providing, furnishing, delivering, distributing or transmitting non-reusable beverage containers by a distributor to a dealer in Montgomery County." Criminal penalties are provided for violators. Unlike its precursor, the tax in question here has no fixed expiration date; nor is its purpose expressly declared by the County Council.

Again, a court challenge followed in which injunctive and declaratory relief was sought. The plaintiffs, who are

---

1. As with Bill No. 30-75, the County Council found it necessary to override a veto of the County Executive in enacting Bill No. 14-76. Although by its original terms, the tax was to become effective on July 1, 1976, its effective date was delayed, presumably because of the veto, until August 15th. In the meantime, the County Council, on July 13th, enacted emergency legislation in the form of Bill No. 22-76, which delayed the effective date of the tax until September 1st.

appellees here, attacked Bill No. 14-76 on the following grounds:

1. That Bill No. 14-76 imposed a sales tax, which the County was prohibited by state law from enacting.

2. That Bill No. 14-76, as amended by Bill No. 22-76 to become effective on September 1, 1976, violated § 52-1 of the Montgomery County Code (1972, 1975 Cum. Supp.), which provides that "all ... taxes shall be levied for a taxable year beginning on July 1 . . . ."

3. That Montgomery County had not been granted valid authority by the General Assembly to enact the tax imposed by Bill No. 14-76.

4. That the beverage container tax constituted a tax on alcoholic beverages, which state law prohibits the County from imposing.

5. That Bill No. 14-76 imposed a burden on interstate commerce and thereby violated the Commerce Clause of the Federal Constitution.

6. That Bill No. 14-76 violated the Federal Constitution for the further reason that it was void for vagueness.

7. That Bills No. 14-76 and 22-76 violated Article XI-A, § 3 of the Maryland Constitution, which prohibits charter counties from enacting laws for any incorporated municipality within their boundaries on any matters covered by the powers lawfully granted to the municipality. This issue was injected into the case by the City of Rockville (the City), which was granted leave by the circuit court to intervene as a party plaintiff, and which is also an appellee here.

Subsequent to the filing of its answer to the bill of complaint, the County filed a motion for summary judgment. The plaintiffs countered with an answer to the motion in which they alleged that there was "a dispute" as to issues 1, 5, 6 and 7. The City, in an answer to the motion for summary judgment, also claimed that a "genuine dispute" existed in regard to issue 7.[2] In striking down the tax, the

---

2. Since the County was not required by Maryland Rule 610 a 3 to file a supporting affidavit, appellees were not required to do so in opposition to

chancellor not only rejected the County's motion, but entered summary judgment for appellees pursuant to Maryland Rule 610 d 1.

The chancellor rested his decision solely on the ground that Bill No. 14-76 imposed a prohibited sales tax, and did not reach the remaining issues. Though noting the changes in Bill No. 14-76 as opposed to its predecessor, particularly the substitution of the word "supplies" for "sells," the chancellor observed that the County Council was merely "attempting to do indirectly that which [it is] prohibited from doing directly." He concluded, relying upon the ruling in the first case, that the tax in this case was also one imposed on sales, which the County was expressly prohibited from imposing by state law. Thus, he issued a decree declaring the tax "void and of no effect," and enjoined its enforcement.

I

In this Court, the County not only argues that the chancellor erred in ruling that the tax in question was a sales tax prohibited by state law, but also urges that we pass on the remaining questions raised by the bill of complaint. Accordingly, it has briefed and argued each of those issues. Appellees take the position that even if we should reverse the chancellor on the first issue, we must then remand the case to the circuit court for a determination of the remaining questions, since factual disputes are involved which would require the presentation of evidence. We have carefully reviewed the record in light of the points raised by appellees in the circuit court, and addressed here by the County, and we conclude that all but the federal constitutional questions presented by issues 5 and 6 can and should now be decided by this Court. The factual disputes in respect to those constitutional questions are not framed with precision, to say the least, but in an excess of caution we shall remand the case solely for a determination of those two questions. As to

the motion. In any event, for what it is worth, neither the plaintiffs nor the City alleged, let alone demonstrated, that the "dispute" each claimed to exist was a dispute of fact.

those questions, therefore, we carefully refrain from expressing any opinion.

As we shall demonstrate, the remaining points raise purely legal issues and by no stretch of the imagination turn on any factual disputes. Appellees argue, however, that the remaining issues are not properly before us in light of Rule 885, which provides that this Court "will not ordinarily decide any point or question which does not plainly appear by the record to have been tried and decided by the circuit court." Thus, appellees maintain, were we to reach those questions, we would be departing from our appellate role, and would be improperly engaging in original fact-finding. This argument is without substance. We cannot, of course, make a factual finding, *Hartley v. State*, 238 Md. 165, 168, 208 A. 2d 72 (1965), but, as we have already stated, no factual dispute exists in respect to these questions, which are purely of a legal nature.

Rule 885 also provides:

> ". . . [B]ut when a point or question of law had [*sic*] been presented to the court and a decision of that point or question of law by this Court is necessary or desirable for the guidance of the circuit court, or to avoid the expense and delay of another appeal to this Court, the point or question of law may be decided by this Court even though it was not decided by the circuit court. . . ."

Although the oral argument before the chancellor was not made part of the record, apparently because it was not transcribed, it is evident that all of the issues were "presented" to him. This is apparent from the extensive legal memoranda filed below. That the chancellor chose to rest his decision on one of several alternative grounds presented to him, and found it unnecessary to decide the remainder, does not preclude us from reaching them. *Panamerican Co. v. Broun*, 238 Md. 438, 447, 209 A. 2d 575 (1965); *Kent v. Mer.-Safe Dep. & Tr. Co.*, 225 Md. 590, 593, 171 A. 2d 723 (1961); *Heat Exchangers v. Map Constr.*, 34 Md. App. 679, 681-82, 368 A. 2d 1088 (1977); *Sanitary Facilities II v. Blum,*

22 Md. App. 90, 101, 322 A. 2d 228, *cert. denied*, 272 Md. 748 (1974); *see Montgomery County v. Glassman*, 245 Md. 192, 198, 225 A. 2d 448 (1967). Not only were the issues presented below, but also they have been thoroughly briefed here; moreover, we think a decision here may reduce, if not eliminate, the expense and delay of another appeal. We hold that all but the federal constitutional questions are properly before us and are ripe for appellate review. We turn first to the question whether Bill No. 14-76 enacted a sales tax which the County is prohibited from imposing by state law.

## II

Our determination of whether the tax in controversy here is a sales tax which the County is prohibited from imposing necessarily begins with a reference to the pertinent state statutes. We recognize at the outset that the statewide sales tax provided in Maryland Code (1957, 1975 Repl. Vol.) Art. 81, §§ 324-371 is by express definition a retail sales tax.[3] This is clearly established not only by both its inclusion in Article 81 under the subtitle "Retail Sales Tax Act" and number of definitions in § 324 which mention the word "retail," but also by § 325 which, in relevant part, provides:

> "For the privilege of selling certain tangible personal property at *retail* as defined [in § 324] and for the privilege of dispensing certain selected services defined as sales at *retail* by § 324 (f) of this subtitle a vendor shall collect from the purchaser a tax at the rate specified in this section on the price of each separate *retail sale* made in this State .... The tax imposed by this section shall be paid by the purchaser ...." (emphasis added.)

---

**3.** We are not concerned here with the Maryland Use Tax provided in Maryland Code (1957, 1975 Repl. Vol.) Art. 81, §§ 372-401, which is complementary to the sales tax. Comptroller v. Glenn L. Martin Co., 216 Md. 235, 242, 140 A. 2d 288, *cert. denied*, 358 U. S. 820 (1958); Borden, *Sales Taxation of Capital Transactions in Maryland*, 33 Md. L. Rev. 1, 20 n. 52 (1973). The tax on retail sales is the most widely known species of sales tax; virtually all state sales taxes take this form. Due, *The Nature and Structure of Sales Taxation*, 9 Vand. L. Rev. 123, 125 (1956).

We draw closer to the problem at hand, however, when we consider the subtitle "Local Sales Tax" in Article 81, which encompasses §§ 411A, 411B and 411C. Section 411A authorizes Baltimore City, Anne Arundel County and Baltimore County to impose "a retail sales tax" within their respective jurisdictions, the administration of which is to be conducted by the State Comptroller. By its own various terms, the tax authorized by § 411A is closely meshed with the statewide retail sales act. Section 411C authorizes Anne Arundel County to impose "a sales or use tax upon fuels and utilities used by commercial and industrial businesses; residential, commercial and industrial telephone service; and space rentals." It is § 411B, however, that becomes the focal point for the contention that Montgomery County is prohibited by state law from imposing the tax in question. In relevant part, § 411B provides:

> "From and after July 1, 1971, no county, municipality or any other political subdivision within this State shall have the power to levy or impose a sales tax or use tax, or any excise tax on the issuance of motor vehicle certificates of title...."

At first glance, an issue arises which might suggest a simple answer to the argument that the County was prohibited from imposing the beverage container tax. Arguably, the sales tax which is denied the political subdivisions of this state by § 411B is limited to the retail variety. Under this theory, the "sales tax" prohibited by § 411B partakes of the character of the retail sales tax established by various preceding provisions in Article 81, particularly § 411A. Thus, § 411A, although expressly providing for a "retail sales tax," uses that term interchangeably with "sales tax." In its brief, the County asserted this position and argued that the beverage container tax, even if deemed a sales tax, was not a retail sales tax; consequently, it was not proscribed by § 411B, which, under this theory, would prohibit only retail sales taxes. At oral argument, however, the County retreated

from this position and conceded, correctly in our view, that it was prohibited by § 411B from imposing any sales tax, whether of the retail genre or not. The decisive issue, then, is whether the beverage container tax in question is a sales tax. In considering this question, we shall make limited reference to those definitions contained in § 325 which we regard as relevant here, even though that section deals with the retail sales tax.

The nature of any sales tax can best be determined by a reference to the particular statute creating it. Moreover, few if any sales tax laws are alike. Consequently, it is not possible to formulate a general definition of the term "sales tax," or even to identify with any uniformity the elements of such a tax. Two ingredients, however, are commonly found in most sales taxes.

The first and most obvious attribute of a sales tax is the taxable event which triggers payment of the tax — the sale. Due, *The Nature and Structure of Sales Taxation*, 9 Vand. L. Rev. 123 (1956). *See generally* Ball, *What Is A Sale for Sales Tax Purposes?*, 9 Vand. L. Rev. 227 (1956). The tax here, as Bill No. 14-76 clearly states, is imposed upon the distributor "who *supplies* to a dealer in Montgomery County non-reusable beverage containers." The pivotal event occurs when the distributor "supplies," rather than sells, the containers to a dealer. "Supplies" is defined as "the act of providing, furnishing, delivering, distributing or transmitting" the containers; nowhere is a sale mentioned or required. The chancellor dismissed the language of the act with the implication that the County was merely imposing a prohibited sales tax under the guise of another label. Or, as the chancellor observed, the County was "attempting to do indirectly" what it was "prohibited from doing directly." Appellees take the same position here, but we do not agree. Not only does Bill No. 14-76 carefully exclude the word "sale" from the definition of "supplies," but also the definition of "distributor" includes "any multiple outlet retail chain store which supplies beverages in beverage containers to its individual outlets in Montgomery County." Thus, the tax is imposed regardless of the method by which

the central distributor distributes the beverages to its own individual outlets. For purposes of the tax here, it matters only that the distributor supplies the beverages. This demonstrates, then, that the taxable event need not, and frequently will not, be a sale. Consequently, there is no justification for the bald conclusion that the tax is dependent upon the occurrence of a sale.

A second identifying characteristic of a sales tax is the standard by which it is measured. Under Art. 81, § 325, the state retail sales tax is imposed by applying the tax rate to the purchase price of the commodity. *Lane Corp. v. Comptroller*, 228 Md. 90, 94, 178 A. 2d 904 (1962); *see Balto. Country Club v. Comptroller*, 272 Md. 65, 73, 321 A. 2d 308 (1974); *cf. Szabo Food Service, Inc. of Cal. v. State Bd. of Equal.*, 46 Cal. App. 3d 268, 119 Cal. Rptr. 911, 913 (1975) (employer subsidized cafeteria; held, subsidy payments were not subject to sales tax); *Penton Publishing Co. v. Kosydar*, 45 Ohio St.2d 16, 340 N.E.2d 396, 398 (1976) (free distribution of magazine held to be a sale, where entire cost of distribution and printing was borne by advertisers; thus, sales of materials to publisher were tax-exempt); *Coca-Cola Bottling Corp. v. Kosydar*, 43 Ohio St.2d 186, 331 N.E.2d 440 (1975) (dispensing equipment loaned to retailers was not acquired for a consideration and thus was not taxable). In one form or another, then, sales taxes are measured by the purchase price or consideration paid for the items. The beverage container tax, however, is measured by neither. Rather, it is the number and capacity of the non-reusable containers supplied by a distributor to a dealer which determines the amount of the tax.

In sum, the beverage container tax imposed by Bill No. 14-76, not arising from sale and not being measured by purchase price or consideration, is lacking the two most vital identifying characteristics of a sales tax. We therefore hold that the tax was not a sales tax and, consequently, was not prohibited by Article 81, § 411B.

## III

Appellees contend that Bill No. 14-76, as amended by Bill No. 22-76 to become effective on September 1, 1976, is in conflict with § 52-1 of the Montgomery County Code (1972, 1975 Cum. Supp.), which, in relevant part, provides:

"In the county . . . all . . . taxes shall be levied for a taxable year beginning on July 1 and ending on June 30 in the next calendar year . . . ." [4]

A short answer to this contention is that Bills No. 14-76 and 22-76 were enacted, not upon the authority of § 52-1, but upon § 52-17, which contains no requirement that a tax imposed thereunder become effective as of any particular date.[5]

Furthermore, § 52-1 is limited in its application to taxes on property, both real and personal, and appellees concede that the beverage container tax is not a property tax, but a form of excise tax. Unlike a property tax, an excise tax is not based on the valuation of property. *Herman v. M. & C. C. of Baltimore,* 189 Md. 191, 197, 55 A. 2d 491 (1947); *Blaustein v. Tax Commn.,* 176 Md. 423, 426, 4 A. 2d 861 (1939). The terms

---

4. In its entirety, § 52-1 of the Montgomery County Code (1972, 1975 Cum. Supp.) provides:

"In the county the date of finality and the semiannual date of finality for the levying of all taxes which the council is now or may hereafter be authorized to levy shall be January 1 and July 1 respectively in each year and all such taxes shall be levied for a taxable year beginning on July 1 and ending on June 30 in the next calendar year, and the state and county taxes shall be levied prior to June 30 each year; provided, however, that nothing herein contained shall be construed to prevent the levying of any assessment for front benefit charges or special benefit assessments for special improvements by the council at any time as the council shall determine the special benefit thereunder; and provided further, that for the fiscal year 1951-52 and thereafter, the date of finality for the assessment of tangible personal property shall be January 1 next preceding the fiscal year."

5. We note, of course, that the power to enact local laws conferred upon charter counties by Art. XI-A, § 3 of the Maryland Constitution includes "the power to repeal or amend local laws . . . enacted by the General Assembly, upon all matters covered by the express powers" granted to such counties.

"date of finality," "semiannual date of finality," and "taxable year," as used in § 52-1, have no meaning except when considered in the context of property taxes. *See State Tax Commission v. Armco,* 226 Md. 533, 540, 174 A. 2d 327 (1961). *See also St. Dep't of A. & T. v. Greyhound Comp.,* 271 Md. 575, 597, 320 A. 2d 40 (1974). Section 52-1 was originally enacted by the General Assembly as part of a public local law, Chapter 278 of the Laws of 1941, prior to the advent of home rule in Montgomery County. Consequently, the term "date of finality" in 52-1 bears the same connotation as it does in Art. 81, § 2 (20), in which " 'date of finality' " is defined as "the date as of which assessments become final for the taxable year." Section 2 (20c) defines the term "taxable year" as "the period by or for which *property* taxes are computed, levied, and collected." (emphasis added.)

The terms in § 52-1, then, have no application to the beverage container tax, which is an excise tax. Chapter 278 itself, moreover, removes any possible doubt that § 52-1 applies only to property taxes. Section 6 expressly provides that "nothing in this Act shall be construed, in any way, to affect the date of finality or the taxable year for the levying and collection of ordinary state taxes." Ordinary taxes have been defined as direct taxes imposed upon real and personal property. *Rapley v. Montgomery County,* 261 Md. 98, 110, 274 A. 2d 124 (1971); *Latrobe v. Comptroller,* 232 Md. 64, 70, 192 A. 2d 101 (1963). We conclude, therefore, that § 52-1 presents no barrier to the enactment of Bills No. 14-76 and 22-76.

IV

Appellees advance their contention that the County lacks authority from the State to enact Bill No. 14-76 in the form of two alternative arguments. First, they take the position that the only power to tax which the General Assembly has granted to the County by public general law is found in Art. 25A, § 5, the Express Powers Act. They refer particularly to § 5 (O), entitled "Assessments, Levy and Collection of Taxes" for the first prong of their contention: that § 5 (O)

only authorizes the County to establish a property tax, a proposition which the County makes no effort to resist.[6]

\* \* \*

In the alternative, appellees maintain that although § 5 (O) confers only the power to levy a property tax, that provision nevertheless embraces the entire subject of taxation for purposes of Art. XI-A, § 4 of the Maryland Constitution, which provides that "no public local law shall be enacted by the General Assembly for [the] . . . County on any subject covered by the express powers granted as above provided." Clearly, the County relies for its authority to enact Bill No. 14-76 on § 52-17 of the Montgomery County Code, a public local law enacted by the General Assembly as Chapter 808 of the Laws of 1963, some 15 years after the County had adopted its charter. Thus, appellees argue, the County was without any authority to impose the tax here in view of the constitutional proscription against such enactment of local legislation by the General Assembly.[7]

---

6. Art. 25A, § 5 (O) grants and confers, in relevant part, the following express powers:

"To direct the class or subclass of improvements on land and personal property which shall be made subject to the county tax levy, and to provide for the levy thereupon and upon the value of land . . . and [to] levy upon the property so subject to taxation from time to time such sums as may be necessary to provide therefor; as well as to collect from such property so subject to the levy such sums as may be necessary for the support and maintenance of the county government.

"To provide for the prompt collection of all taxes due the county; and for the sale of real estate, as well as leasehold and personal property, for the payment of the same.

"To rectify errors in the assessment of property; to provide for the reduction or abatement of assessments improperly made, and for the reimbursement of moneys paid in consequence of such errors.

"To levy and collect taxes for the organization, operation, maintenance of libraries, fire and ambulance services, and other municipal services . . . ."

\* \* \*

7. In pertinent part, § 52-17 of the Montgomery County Code provides:

"(a) *Generally.* The county council is hereby empowered and authorized to have and exercise, within the limits of the county, in addition to any and all taxing powers heretofore granted by the general assembly, the power to tax to the same extent as the state

Since the County does not contest the argument that § 5 (O) grants only the power to provide for a property tax and that the Express Powers Act grants no other taxing power, we address the novel but unpersuasive argument that § 5 (O) somehow covers the entire field of taxation within the meaning of Art. XI-A § 4, so as to bar any local legislation by the General Assembly on that subject. Just how the Express Powers Act can grant the power to establish only a property tax, but at the same time cover the entire subject of taxation is not revealed to us. In any event, virtually the identical argument was advanced and soundly rejected in *Reinhardt v. Anne Arundel Co.*, 31 Md. App. 355, 373, 356 A. 2d 917 (1976), where a similar attack was mounted on Art. 81, § 411C, which we mentioned earlier. As the court there observed:

> "... The Legislature ... in enacting the Express Powers Act's grant of taxing power." (emphasis in Baltimore City and to those Counties of the State who elected to adopt a charter form of government. It did not surrender its right to enact local taxation legislation in areas not included within the Express Powers Act's grant of taxing power." (emphasis in original.)

We likewise agree that the entire subject of taxation is not "covered" by the Express Powers Act within the meaning of Art. XI-A, § 4 of the Maryland Constitution. We therefore hold that § 52-17 of the Montgomery County Code, though enacted by the General Assembly as a public local law, does

---

has or could exercise such power within the limits of the county as a part of its general taxing power; and to provide by resolution for the imposition, assessment, levy and collection of any tax or taxes authorized by this section; and from time to time to grant exemptions and to modify or repeal existing or future exemptions."

Subsection b enumerates a series of exceptions to the taxing power granted in subsection a, none of which is relevant here except for those which forbid imposition of a tax on "alcoholic beverages" and "any other tax prohibited to a political subdivision of this state by any applicable statewide law." Given our holding that Bill No. 14-76 is not a sales tax, and is therefore not prohibited by Art. 81, § 411B, the beverage container tax in controversy here is clearly not among the enumerated exceptions.

not violate that constitutional prohibition by granting the County the power to impose additional forms of taxation beyond the property tax.

## V

Appellees next contend that Bill No. 14-76 constitutes an impermissible tax on alcoholic beverages in contravention of not only § 52-17 of the Montgomery County Code, but also Code (1957, 1976 Repl. Vol.) Art. 2B, § 135, which expressly denies to the political subdivisions of this state the power "to impose any tax on distilled spirits, beer, wine or any other alcoholic beverage." Under this argument, Bill No. 14-76, by allegedly imposing a tax "on the quantity of beer in a container" is consequently a tax on beer, and is therefore prohibited by that statute.

A complete refutation of appellees' argument is contained within the language of Bill No. 14-76 itself. The act imposes a tax on every distributor who supplies certain non-reusable beverage containers to a dealer in Montgomery County. Bill No. 14-76 neither taxes the contents of the containers nor measures the amount of the tax by those contents. That a container subject to the tax might happen to contain beer, which concededly cannot be the subject of a county tax, does not convert a tax on certain distributors of non-reusable containers into one on alcoholic beverages.

In sum, then, Art. 2B, § 135 prohibits political subdivisions from imposing a tax on alcoholic beverages. The beverage container tax imposed by the County, however, does not run afoul of the prohibition because it is merely a tax on the containers in which one particular kind of alcoholic beverage is sold. *Cf. Bowie Inn v. City of Bowie*, 274 Md. 230, 248-49, 335 A. 2d 679 (1975) (municipality's mandatory container deposit law held not to conflict with state preemption of alcoholic beverage regulation).

## VI

The final issue to be decided here arises from the intervention of the City, which contends that Bills No. 14-76

and 22-76 are regulatory measures, rather than revenue legislation, and therefore violate Art. XI-A, § 3 of the Maryland Constitution. That provision prohibits a charter county from enacting "laws or regulations for any incorporated . . . municipality in said County, on any matter covered by the powers granted to said . . . municipality by the Act incorporating it, or any subsequent Act or Acts amendatory thereto." The City argues that the effect of the beverage container tax is to regulate the depositing and disposal of all waste materials within the boundaries of Rockville, when Code (1957, 1973 Repl. Vol.) Art. 23A, § 2 (14) grants express power to such municipalities to "regulate or prevent the throwing or depositing of any dirt, garbage, trash, or liquids in any public place and to provide for the proper disposal of such material." The City reminds us that this very same provision was held by us to be adequate authority for the container deposit ordinance, a regulatory measure by any standard, which we upheld in *Bowie Inn v. City of Bowie*, 274 Md. 230.

The thrust of the City's argument, then, is that Montgomery County cannot adopt any measures regulating non-reusable beverage containers that would apply within the City's borders; hence the importance of a determination as to whether Bills No. 14-76 and 22-76, though labeled revenue enactments, are instead prohibited regulatory measures. As we have said in a similar context, "regulatory Acts passed under the guise of revenue Acts must be held void." *Theatrical Corp. v. Brennan*, 180 Md. 377, 385, 24 A. 2d 911 (1942); *see Anne Arundel County v. English*, 182 Md. 514, 520-21, 35 A. 2d 135 (1943).

The imposition of taxes is, concededly, a recognized mode of regulating the use of non-returnable beverage containers. 1 F. Grad, *Treatise on Environmental Law* § 4.04[1] (1975); Ruchelman, *Municipal Regulation of Non-returnable Containers*, 1 Envt'l Law 257 (1971); *see Society of Plastics Indus., Inc. v. City of New York*, 68 Misc. 2d 366, 326 N.Y.S.2d 788, 794-95 (Sup. Ct. 1971). The theory underlying such a tax is that in one form or another it is passed on to the consumer, who will be encouraged to purchase beverages

in returnable containers, thereby reducing the amount of solid waste with which the local community must deal. Among the several possible alternatives for alleviating the problem, the tax is suggested as the equitable solution, since it forces "the consumer who purchases the throwaway to pay for collection of container litter." Greef & Martin, *Beverage Container Legislation: A Policy and Constitutional Evaluation,* 52 Texas L. Rev. 351, 361 (1974). The question here, then, is whether the beverage container tax was in reality such a regulatory measure.

To support its argument that Bills No. 14-76 and 22-76 are regulatory measures, the City points to the fact that Bill No. 30-75, the predecessor which was previously struck down, was included in a package of three bills aimed at regulating non-returnable beverage containers; and that this purpose was clearly emphasized in the testimony presented to the County Council prior to passage. Our difficulty with this argument is that it refers to Bill No. 30-75, not to those in dispute here. Moreover, if legislative enactments otherwise establish themselves as valid revenue measures, we do not examine the motives of legislators who voted for them, even assuming that regulation was their objective. *Brown v. State,* 177 Md. 321, 328-29, 9 A. 2d 209 (1939).

In *Theatrical Corp. v. Brennan,* 180 Md. at 381-82, we enunciated the criteria for determining whether a particular legislative act is a revenue measure or a regulatory enactment:

> ". . . A regulatory measure may produce revenue, but in such a case the amount must be reasonable and have some definite relation to the purpose of the Act. A revenue measure, on the other hand, may also provide for regulation, but if the raising of revenue is the primary purpose, the amount of the tax is not reviewable by the courts. There is no set rule by which it can be determined in which category a particular Act primarily belongs. In general, it may be said that when it appears from the Act itself that revenue is its main objective, and

the amount of the tax supports that theory, the enactment is a revenue measure. '... [W]here the fee is imposed for the purpose of regulation, and the statute requires compliance with certain conditions in addition to the payment of the prescribed sum, such sum is a license proper, imposed by virtue of the police powers; but where it is exacted solely for revenue purposes and its payment gives the right to carry on the business without any further conditions, it is a tax.'" (citations omitted.)

*Accord, American Nat'l v. M. & C. C.,* 245 Md. 23, 33-34, 224 A. 2d 883 (1966).

Here, the amount of the tax rate is significant. The fact that it is moderate by comparative standards tends to confirm that it is primarily a revenue raising device, rather than a means of regulating non-reusable beverage containers. If the tax rate were high, then it would more likely serve as a deterrent to the use of such containers, and if high enough, could be regarded as a thinly veiled method of banning the containers. *See* Note, *State and Local Regulation of Nonreturnable Beverage Containers,* [1972], Wis. L. Rev. 536, 540. As we have intimated, however, even a relatively modest tax may cause a burden to the distributor who must pay it, or to the consumer who may ultimately bear its burden. But what the Supreme Court said in this regard in *Sonzinsky v. United States,* 300 U.S. 506, 513-14, 57 S. Ct. 554, 81 L. Ed. 772 (1937), is instructive here:

"Every tax is in some measure regulatory. To some extent it interposes an economic impediment to the activity taxed as compared with others not taxed. But a tax is not any the less a tax because it has a regulatory effect ... and it has long been established that an Act of Congress which on its face purports to be an exercise of the taxing power is not any the less so because the tax is burdensome or tends to restrict or suppress the thing taxed. ...

"Inquiry into the hidden motives which may

move Congress to exercise a power constitutionally conferred upon it is beyond the competency of courts. . . . They will not undertake, by collateral inquiry as to the measure of the regulatory effect of a tax, to ascribe to Congress an attempt, under the guise of taxation, to exercise another power denied by the Federal Constitution. . . ." (citations omitted.)

*Accord, United States v. Ross,* 458 F. 2d 1144, 1145 (5th Cir.), *cert. denied,* 409 U. S. 868 (1972).

In our view, Bills No. 14-76 and 22-76 are revenue measures, since the raising of revenue is their dominant thrust. Stripped of the imposition of the tax itself and the necessary accompanying definitions, the bills would be virtually meaningless. In no real sense is any effort made in the bills to regulate those distributors directly affected by the tax. Nor is it properly our concern that a possible collateral economic effect of the tax may be to regulate the consumer's purchasing habits. Since the bills are revenue measures, they were not enacted in contravention of Article XI-A, § 3 of the Maryland Constitution.

As we indicated earlier, we shall remand the case solely for a determination of the two federal constitutional issues, which, we were assured, present factual disputes.

> *Judgment reversed; remanded for further proceedings in conformity with this opinion; appellees to pay costs.*