786 A.2d 48

HALLE DEVELOPMENT, INC., et al.,

v.

ANNE ARUNDEL COUNTY, Maryland.

No. 32, Sept. Term, 2001.

Court of Special Appeals of Maryland.

Dec. 4, 2001.

John R. Greiber, Jr., Annapolis, for appellants.

Hamilton F. Tyler, Senior Assistant County Attorney (Linda M. Schuett, County Attorney, on the brief), Annapolis, for appellee.

Argued before JAMES R. EYLER, THEODORE G. BLOOM (Ret., specially assigned), RAYMOND G. THIEME, Jr. (Ret., specially assigned), JJ.

JAMES R. EYLER, Judge.

Appellants, Halle Development, Inc., Halle Enterprises, Inc., and Arundel Homes, Inc., challenge the legality of a practice engaged in by appellee, Anne Arundel County, whereby appellee contracts with a developer to waive the application of one or more of the requirements of its adequate public facilities ordinance to a proposed subdivision in exchange for the payment of money or the conveyance of land by a developer. We hold that the practice is lawful.

### Factual Background

On September 5, 2000, appellants Halle Development, Inc. and Halle Enterprises, individually and on behalf of a class, filed a complaint in the Circuit Court for Anne Arundel County against appellee and several present and former county officials. Arundel Homes was later added as a plaintiff. Appellants alleged that all plaintiffs were engaged in residen-

tial development in Anne Arundel County or were persons seeking to subdivide "small parcels and family conveyances" of land in the county.

The following is the essence of appellants' claim. In 1967, appellee adopted an adequate public facilities ordinance (APF), Anne Arundel County Code, Article 26, sections 2–409 through 2–420. The purpose of the ordinance was to protect the citizens of Anne Arundel County, and the environment, from proposed residential subdivision developments that failed to demonstrate adequate fire suppression facilities, roads, schools, water supply systems, sewerage systems, and storm drainage systems. Article 26 is entitled "subdivisions"; title 2 is entitled "plat submission and approval proceedings"; subtitle 4 is entitled "final plan review"; and part 2 is entitled "adequacy of facilities." The ordinance provides that a final subdivision plat cannot be approved until the ordinance's requirements have been satisfied. *See* Article 26, § 2–413. Sections 2–416 and 2–411 are particularly relevant to this case.

Section 2–416(b) provides that, "within two years following approval of a final subdivision plat, elementary and secondary schools in the service area of the proposed subdivision shall be adequate to accommodate the school population projected to be generated from the proposed subdivision." Section 2–411(b) provides:

On request by a subdivider, the Planning and Zoning Officer may waive the application of one or more of the requirements of this Part 2 of this subtitle to a proposed subdivision, if the Planning and Zoning Officer finds that:

(1) the application of the requirement to the proposed subdivision would result in peculiar and exceptional practical difficulty to or exceptional and demonstrable undue hardship on the subdivider, other than financial considerations;

(2) the physical features and other characteristics of the proposed subdivision are such that the waiver may be granted without impairing the intent and purpose of the requirement for which the waiver has been requested, the

other provisions of this article, the Zoning Article, and the General Development Plan;

(3) the grant of the waiver will not endanger or present a threat to the public health, safety, or welfare; and

(4) the waiver is the minimum relief available and necessary to relieve the difficulty or hardship to the subdivider.

Section 2–411(c) provides: "The Planning and Zoning Officer may impose such conditions on the grant of the waiver as are reasonably necessary to further the intent of the requirement for which the waiver was requested and to ensure the protection of the public health, safety, and welfare."

In 1989, according to appellants, appellee created a procedure whereby applicants could obtain approval to subdivide land by entering into agreements with appellee pursuant to which appellee would waive the requirements of the APF ordinance in exchange for money or land. Pursuant to the practice, appellee, according to appellants, collected millions of dollars plus land that was conveyed to it to be used as sites for future facilities.

The following agreements were entered into between one or more of the appellants and appellee. The agreements all relate to waiver of the APF ordinance's requirements with respect to adequate school facilities. By letter dated February 10, 1989, in connection with Halle Development's proposed subdivision known as Seven Oaks, appellee advised Halle Development that existing school facilities were not adequate and that a school waiver agreement would be necessary in order to gain approval of its proposed subdivision. An agreement entitled Seven Oaks School Agreement, dated March 22, 1989, was entered into between Halle Development and appellee. Pursuant to the terms of the agreement, Halle Development agreed to pay $4,700,000 to appellee in installments. On February 21, 1995, Halle Development and appellee entered into the Old Mill High School Agreement. Pursuant to the terms of that agreement, Halle Development agreed to pay appellee $124,000 in exchange for a waiver of the APF ordinance's requirements with respect to adequate school facilities.

On March 30, 1995, in connection with a proposed development in the Crofton area, Crofton Farms Development Corp., Severn Valley Farms, Inc., Halle Enterprises, and the Richards Group of Washington entered into a school agreement whereby Halle Enterprises agreed to convey a parcel of land to appellee in exchange for a waiver of the APF ordinance's school requirements. On August 24, 1999, Arundel Homes and appellee entered into the Cape St. Clair Elementary School Agreement. Pursuant to that agreement, Arundel Homes agreed to pay $34,200 to appellee in exchange for a waiver of the APF ordinance's requirements with respect to schools applicable to a proposed subdivision known as Walnut View.

The Seven Oaks subdivision was originally intended to contain 4,767 dwelling units. In the early 1990's, it was reduced in size. A dispute arose between Halle Development and appellee over payment of the amounts contained in the agreement. On October 11, 1990, Halle Development filed suit in the Circuit Court for Anne Arundel County against appellee seeking adjudication of its liability under the agreement. Appellee filed a counterclaim for failure to make the last payment under the agreement. The parties entered into a settlement agreement on January 16, 1992. Pursuant to the settlement, the total amount due was reduced and Halle Development agreed to transfer real property to be used as a future school site. The case was dismissed with prejudice. On July 1, 1992, Halle Development defaulted under the settlement agreement. Subsequently, Halle Development filed a bankruptcy petition pursuant to Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Maryland. Halle Development also filed an adversary proceeding in which it requested that the acreage transferred pursuant to the settlement agreement be made part of the bankruptcy estate. After the automatic stay imposed by the United States Bankruptcy Code was lifted, appellee filed a complaint for declaratory judgment in the Circuit Court for Anne Arundel County. The parties, on June 9, 1993, again settled their differences. The

settlement was approved by the United States Bankruptcy Court, and the adversary proceeding and the declaratory judgment action were dismissed with prejudice.

On August 6, 1997, Halle Development filed suit in the Circuit Court for Anne Arundel County challenging the Old Mill High School Agreement dated February 21, 1995. Halle Development alleged breach of contract and an unconstitutional taking in violation of the Fifth Amendment. The suit was based upon new projections indicating that school facilities were adequate. Summary judgment was entered in favor of Halle Development in the amount of $124,000, and the judgment was satisfied.

Appellants alleged that they had no knowledge of the practice described above until February 11, 2000, when an article appeared in *The Baltimore Sun* newspaper. The article discussed the practice and, according to appellants, quoted a county legal representative as stating " 'the county ordinance (APF) specifically forbids the granting of waivers for financial considerations.' "

The complaint and amended complaint, filed by appellants in the case before us, contained numerous counts. We summarize the counts with a few explanatory comments of our own. Count one alleged a violation of 42 U.S.C. § 1983 but did not set forth any specific constitutional provisions. Count two alleged a violation of Article 6 of the Maryland Declaration of Rights. Article 6 provides that persons invested with legal or executive powers of government are accountable for their conduct. Count three alleged a violation of Article 14 of the Maryland Declaration of Rights. Article 14 provides "no aid, charge, tax, burthen or fees" may be levied without the consent of the Legislature.

Count four alleged a violation of Article 24 of the Maryland Declaration of Rights in that appellants were deprived of property without due process of law. Count five alleged a violation of Article XI–F, section 9, of the Maryland Constitution. Article XI–F is applicable to code counties, and section 9 deals with the power to levy taxes or license fees. Count six

alleged that appellee fraudulently induced appellants to enter into the school waiver agreements.

Count seven alleged that appellee fraudulently misrepresented its authority to request such agreements. Count eight alleged a conspiracy to implement the unlawful practice. Count nine alleged that the school waiver agreements were in violation of public policy.

Count ten alleged breach of contract based on an assertion that each provision in the waiver agreements "represented an impossible condition of performance." Count eleven alleged that the agreements were illegal and sought rescission. Count twelve alleged that the conveyances of property pursuant to the agreements were illegal and invalid. Count thirteen alleged negligence.

As relief, appellants requested a declaratory judgment that appellee's conduct was unlawful and unconstitutional; rescission of the school waiver agreements; the return of property conveyed pursuant to the agreements; compensatory damages in the amount of $25 million; punitive damages in the amount of $25 million; attorney's fees; and costs.

On October 19, 2000, by stipulation of the parties, appellants dismissed their claims with respect to the individual defendants, counts six, seven, eight, and thirteen as to all defendants, and the punitive damage claims as to all defendants. Subsequently, appellants and appellee filed cross-motions for summary judgment. In an opinion and order dated February 16, 2001, the circuit court granted appellee's motion for summary judgment and denied appellants' motion for summary judgment. The circuit court held that the claims by the Halle plaintiffs were barred by the statute of limitations; the claims by the Halle plaintiffs were barred by *res judicata;* the common law tort claims were barred by failure to give notice under the Local Government Tort Claims Act; appellee had the power and authority to collect the money and to accept the conveyances of land called for in the waiver agreements; and as a result, there was no evidence of breach of contract, fraud,

negligence, or conspiracy. Appellants noted an appeal to this court, and appellee noted a cross-appeal.

### Questions Presented

Appellants present the following questions, as rephrased by us:

1. Does the school waiver agreement process violate Article 14 of the Maryland Declaration of Rights because appellee was not granted the power by the Legislature to enter into the agreements?

2. If the process does not violate Article 14 of the Maryland Declaration of Rights, is it arbitrary and capricious?

3. Are the claims barred by the statute of limitations?

4. Are the claims barred by *res judicata?*

With respect to the cross-appeal, appellee presents the following questions, as rephrased by us:

1. Are appellants' claims barred because appellants failed to exhaust administrative remedies?

2. Are appellants' claims based on violations of the state constitution barred for failure to comply with the notice provisions of the Local Government Tort Claims Act?

3. Are appellants' claims barred by the doctrine of laches?

4. Does appellants' claim under 42 U.S.C § 1983 state a claim upon which relief can be granted?

### Discussion

#### 1.

Appellants contend that the compensation received by appellee pursuant to the waiver agreements constituted an excise tax. Appellants assert that a charter county, such as appellee, does not have the power to tax unless it has been delegated that power by the Legislature. The circuit court agreed with appellants that the compensation was an excise tax but found that appellee had the power to impose the tax under Maryland Code, Article 25A, section 5(O), the enabling

legislation for charter counties, or pursuant to the Laws of Maryland 1986, chapter 350, a public local law. Appellants disagree with that conclusion.

Appellee contends that the compensation received pursuant to the agreements was not a tax, and that the agreements were valid, binding agreements. We agree with appellee.

Appellants are correct that the county has taxing power only to the extent delegated by the State. *See Waters Landing Limited Partnership v. Montgomery County*, 337 Md. 15, 19, 650 A.2d 712 (1994). Appellee has not been given general power to tax. Appellants are also correct that, if the compensation received by appellee under the school waiver agreements constitutes an excise tax, appellee does not have power to impose such a tax under Article 25A, section 5(O). The taxing power under that section is limited to property tax. *See Montgomery County v. Maryland Soft Drink Association*, 281 Md. 116, 130, 377 A.2d 486 (1977). The authorities just cited also stand for the proposition, however, that the Legislature can grant additional taxing power to a charter county by public local law. *See id. See also Reinhardt v. Anne Arundel County*, 31 Md.App. 355, 373, 356 A.2d 917 (1976).

Before discussing the public local law enacted in 1986, we shall provide a brief overview. The APF ordinance, in its relevant form, has been applicable to proposed and actual subdivisions since 1978. *See* § 2–410.

In 1987, appellee enacted an ordinance providing for the imposition of development impact fees. That ordinance appears in title 7 of Article 24 (Planning and Development) of the Anne Arundel County Code. Section 7–102 of Article 24 states that the purpose of the ordinance is to require new development to pay its fair share of costs for "land, capital facilities, and other expenses necessary to accommodate developmental impacts on public school and transportation facilities." The section further provides that it complements Article 26, sections 2–409 through 2–420, by requiring a development to pay its share of costs for all reasonably attributable impacts on school and transportation facilities. The

amount of the development impact fee is determined by a fee schedule contained in section 7–104, or by an independent impact analysis. *See* § 7–105.

The Legislature, in chapter 350 of the Laws of Maryland 1986, authorized appellee to fix and collect development impact fees for financing the capital costs of additional or expanded public works, improvements, and facilities required to accommodate new construction or development. That authorization appears in Anne Arundel County Code, Article 24, section 7–113. Appellants contend that the authorization contained in chapter 350 of the Laws of Maryland 1986 did not authorize the receipt of compensation under Article 26, which appellants believe to be an excise tax, or, if it does, then the right to receive payment under both Article 24 and Article 26 constitutes a duplicate tax.

We return to the question of whether the compensation received by appellee under the waiver agreements constituted a tax. In *Eastern Diversified Properties, Inc. v. Montgomery County*, 319 Md. 45, 570 A.2d 850 (1990), the Court of Appeals had before it a development impact fee imposed in 1986 by Montgomery County, a charter county. The fee was generally imposed when a building permit was issued, and the revenue generated was used for road construction. The Court discussed the difference between a regulatory charge and a tax and stated that generally the purpose of an exaction governs. Ordinarily, the principal question is whether raising revenue is the main objective. The Court observed that no service was provided by Montgomery County in exchange for the fee, and the fee was not used to defray expenses of a regulatory process. The primary purpose, according to the Court, was to raise revenue, and there were no further conditions imposed on the developer after the developer paid the fee. Consequently, the Court concluded that the fee was an excise tax and the county did not have authority to collect it under its general police power. *See* Article 25A § 5(S).

In *Waters Landing Limited Partnership v. Montgomery County*, 337 Md. 15, 650 A.2d 712 (1994), the Court again had

the Montgomery County development impact fee before it. The appellants, in *Waters*, paid the fees between 1988 and 1990. The Court set forth the general proposition that counties have authority to tax only if that authority is specifically granted by the state. After observing that much of the county's power was derived from Article 25A, the Court also observed that the Legislature could grant additional powers to a single charter county through public local laws. The Court held that it did so in 1963 with respect to Montgomery County. At that time, through public local law, the Legislature granted to Montgomery County a general power to tax, with certain express exceptions. In 1990, through public local law, the Legislature expressly named development impact fees as part of the county's general taxing power. The Montgomery County Council, in 1990, reenacted the fee as a "tax" pursuant to its taxing power.

The *Waters* Court, commenting on *Eastern Diversified,* stated that in that case the court found that the development impact "fee" was a tax and that Montgomery County was without authority to impose such a fee under its general police power.

*Eastern Diversified,* according to the *Waters* Court, merely held the county could not "tax" if it were disguised as a fee imposed under its police power; the *Eastern Diversified* Court did not decide whether the county had the power to "tax." The *Waters* Court reiterated that the fee was an excise tax but held that the county did have the power to "tax" pursuant to the authority granted in 1963, well before the express reference in 1990. Finally, the *Waters* Court observed that the 1990 ordinance enacted by Montgomery County, which changed the compensation collected from a "fee" to a "tax" and which explicitly permitted development impact "taxes," was intended to be retroactive and that such retroactivity was permitted.

We conclude that the case before us is more akin to *Rockville v. Brookeville Turnpike Construction Co.,* 246 Md. 117, 228 A.2d 263 (1967), and *Meredith v. Talbot County,* 80

Md.App. 174, 560 A.2d 599 (1989), than it is to *Waters.* In *Rockville,* the City sought specific performance of a contract entered into between it and a developer. The developer wanted to build on land located partly within the City of Rockville and partly outside the City of Rockville. As part of the agreement, the City agreed to annex that portion of the property not within the boundaries. The developer agreed to (1) dedicate a one-half acre parcel of land for a street, (2) develop two areas for recreational use, and (3) attempt to obtain an additional three acres to dedicate and, if unsuccessful, to pay $10,000 to the City. The Court of Appeals held that the City had power to receive consideration in exchange for annexation, that the contract was voluntary, and that it did not lack mutuality. *See Rockville,* 246 Md. at 121, 228 A.2d 263. Because the City had power to annex but could not be compelled to do so, the City could include reasonable *bona fide* conditions if they related to the area involved. *See id.* at 129, 228 A.2d 263.

In *Meredith,* a developer sought to build on land located within the Chesapeake Bay Critical Area Protection Program. Md. Nat. Resources Code §§ 8–1801–8–1816. The developer entered into an agreement with Talbot County whereby, in exchange for subdivision approval, the developer agreed to reserve five lots until four years after bald eagles ceased using the subdivision property.

▆▆▆ In the case before us, appellee had the power to enact the APF ordinance pursuant to its general police power and power to regulate planning and zoning. *See* Art. 25A, §§ 5(S), 5(X). *Waters* states that, in determining whether compensation received by a county is a fee or a tax, we look to its purpose and not merely its label. *See Waters,* 337 Md. at 25–27, 650 A.2d 712. In this case, the label used was not a fee or a tax. Rather, the label was compensation in exchange for a waiver under Article 26. Appellee did not collect a fee applicable to an activity that the developer had the right to pursue. The developer was prohibited from going forward in the absence of adequate facilities. Appellants do not contend

that the facilities were adequate. The parties entered into a contract pursuant to which appellee waived the bar represented by the APF ordinance in exchange for compensation to be used to make the facilities adequate in the area in question. The parties were free to so contract. We hold that the waiver agreements are valid contracts, rather than devices to exact taxes, and consequently, we do not reach the question of appellee's power to impose an excise tax.

With respect to such power, however, we note the following. Articles 24 and 26 complement each other. The power to collect a "development impact fee," even if it is a "tax," was granted by chapter 350, Laws of Maryland 1986. That statute granted broad authority to raise revenue for capital improvements. Assuming the compensation in question is a tax, it would seem to be encompassed within the broad power granted by chapter 350 and such power would not cease to exist because the compensation was not labeled as a development impact fee.

Appellants claim that if appellee has the power to collect money under both Article 24 and Article 26, then such constitutes an unlawful double tax. Assuming the compensation collected was a tax, there is no suggestion, as a factual matter, that appellants paid duplicate compensation under Articles 24 and 26. Additionally, no universal, constitutional ban on double taxation exists. The Supreme Court, in *Fort Smith Lumber Co. v. Arkansas*, 251 U.S. 532, 40 S.Ct. 304, 64 L.Ed. 396 (1920), explained that, "[t]he Fourteenth Amendment no more forbids double taxation than it does doubling the amount of a tax; short of confiscation or proceedings unconstitutional on some other grounds." *Fort Smith*, 251 U.S. at 533, 40 S.Ct. at 305.

■ Article 15 of the Maryland Declaration of Rights mandates that property taxes be equal and uniform, thereby forbidding taxing the same property twice for the same purpose. *See State v. Sterling*, 20 Md. 502, 520 (1864); *Weaver v. Prince George's County*, 281 Md. 349, 355, 379 A.2d 399 (1977). Article 15 applies only to property taxes however, and is

therefore inapplicable to the instant appeal. If the compensation received by appellee under the waiver agreements was, as appellants maintain, an excise tax, then Article 15's uniformity requirement does not apply. *See Weaver*, 281 Md. at 355, 379 A.2d 399. Appellant has not brought any other authority to our attention that could potentially give merit to appellants' "double taxation" argument.

### 2.

Appellants contend that the waiver agreements are unconstitutional because Article 26 lacks guidelines for the imposition of waiver fees. Appellants state that the absence of such guidelines becomes more apparent when one compares Article 26 with Article 24, which does contain specifics. Additionally, appellants contend that Article 26, section 2–411(b)(1), prohibits the grant of waivers based on financial considerations.

As discussed in the preceding section, appellee did not impose and collect fees or taxes pursuant to an ordinance expressly authorizing the collection of such. The APF ordinance prohibits development in the absence of adequate facilities. The parties negotiated and entered into a contract voluntarily and with consideration running from each party to the other. The contracts are not unconstitutional.

With respect to appellants' second point, section 2–411(b)(1) provides that the APF ordinance may be waived if "the application of the requirement to the proposed subdivision would result in peculiar and exceptional practical difficulty to or exceptional and demonstrable undue hardship on the subdivider, other than financial considerations." Laws that are unambiguous need not be judicially interpreted, and "the words used [in the law] should be construed as having their ordinary and accepted meaning." *Reinhardt v. Anne Arundel County*, 31 Md.App. 355, 362, 356 A.2d 917 (1976)(citing *Scoville Service, Inc. v. Comptroller of the Treasury*, 269 Md. 390, 393–94, 306 A.2d 534 (1973)). The plain meaning of the ordinance is that "financial considerations" refers to the developer's basis for claiming a waiver and does not refer to

appellee's ability to negotiate a waiver in exchange for compensation.

### 3.

First, appellants contend that limitations is not applicable because the ordinance in question is unlawful and unconstitutional. Second, if the three-year general statute of limitations contained in Maryland Code, Courts and Judicial Proceedings, section 5–101 applies and if the discovery rule applies, appellants contend that their causes of action did not accrue until February 11, 2000, because they did not realize that appellee had misrepresented its authority until that time. Third, appellants contend that the agreements are specialty agreements or agreements under seal and thus the twelve year statute of limitations applies. *See* Md. Ct. & Jud. Proc.Code § 5–102. Appellants argue that the agreements were intended to be such because the process contained in the agreements would ordinarily extend beyond the normal period of limitations. They point out that the word "seal" on the signature lines is an indication of that intent.

In light of our disposition of the first two issues, we need not address these contentions.

### 4.

Appellants contend that the claims are not barred by *res judicata* because they had no reason to question the authority of appellee until February 11, 2000. Appellants argue that the issues in the prior litigation were different from the issues in this litigation.

In light of our disposition of the first two issues, we need not address this contention.

### Cross Appeal

In light of our disposition of appellants' issues, there is no need to address the issues raised by appellee on cross-appeal.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**